**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

ARKANSAS FEDERAL CREDIT UNION
and THE SUMMIT FEDERAL CREDIT
UNION, on Behalf of Themselves and All
Others Similarly Situated,

                          Plaintiffs,

        v.

HUDSON'S BAY COMPANY, SAKS
FIFTH AVENUE LLC, SAKS &
COMPANY LLC, SAKS
INCORPORATED, and LORD &
TAYLOR, LLC,

                         Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1:19-cv-04492 (PKC)
[rel. 1:18-cv-08472 (PKC)]

------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Kenneth I. Schacter
Jawad Muaddi
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

-and-

Gregory T. Parks (admitted *pro hac vice*)
Ezra D. Church (admitted *pro hac vice*)
Kristin M. Hadgis (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

*Attorneys for Defendants Hudson's Bay Company,*
*Saks Fifth Avenue LLC, Saks & Company LLC,*
*Saks Incorporated, and Lord & Taylor LLC*

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...................................................................1

II.    STATEMENT OF FACTS........................................................................2

    A.    Participants in the Payment Card System Agree to the Payment Card Rules ...............................................................................................2

    B.    Payment Card Contracts and Rules Govern Recovery in An Incident...................3

III.   STANDARD OF REVIEW ......................................................................5

    A.    Rule 12(b)(6) ...................................................................................5

    B.    The Court Can Properly Consider the Payment Card Rules ................................5

    C.    Choice of Law ...................................................................................7

IV.    ARGUMENT ...........................................................................................9

    A.    Plaintiffs Cannot Pursue Non-Contract Claims Where a Contract Governs. ..........9

        1.    Courts Have Dismissed Identical Claims Brought by Financial Institution Plaintiffs Against Retailers. ..................................9

        2.    Plaintiffs' Extra-Contractual Claims Require Dismissal Under All of the State Laws Potentially at Issue Here. .............................13

            a.    New York ...................................................................14

            b.    Arkansas ...................................................................18

            c.    The Nine Other States in Which Plaintiffs' Members Are Located Similarly Follow This Same Principle.........................19

    B.    Plaintiffs Fail to Plausibly Allege Causation and Damages. ...............................20

    C.    Plaintiffs' Declaratory Judgment "Claim" Must Be Dismissed. ..........................22

V.     CONCLUSION .......................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
  96 N.Y.2d 280 (2001) ............................................................................................... 14

*Am. Fid. Assurance Co. v. Bank of New York Mellon*,
  No. 11-1284-D, 2018 WL 6582381 (W.D. Okla. Oct. 31, 2018) ........................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 5

*Avazpour Networking Servs., Inc. v. Falconstar Software, Inc.*,
  937 F. Supp. 2d 355 (E.D.N.Y. 2013) .............................................................. 15, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 5, 20

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*,
  353 F. Supp. 3d 1070 (D. Colo. 2018) ................................................. 6, 12, 13, 16

*BNP Paribas Mtg. Corp. v. Bank of Am., N.A.*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013) ....................................................... 14, 15, 16

*BSH Hausgerate, GmbH v. Kamhi*,
  282 F. Supp. 3d 668 (S.D.N.Y. 2017) ..................................................................... 6

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ..................................................................................... 5

*Clark–Fitzpatrick, Inc. v. Long Island R. Co.*,
  70 N.Y.2d 382 (N.Y. 1987) .............................................................................. 14, 15

*Cmty. Bank of Trenton v. Schnuck Markets*,
  210 F. Supp. 3d 1022 (S.D. Ill. 2016) .................................................................... 17

*Cmty. Bank of Trenton v. Schnuck Markets*,
  887 F.3d 803 (7th Cir. 2018) ..........................................................................*passim*

*Cunningham v. Cornell Univ.*,
  No. 16-cv-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ............................. 7

*Fed. Ins. Co. v. Weinstein*,
  No. 18 CIV. 2526, 2019 WL 1407455 (S.D.N.Y. Mar. 28, 2019) .......................... 8

*Filat v. Rand,*
    2015 Ark. App. 316 (2015) ................................................................................. 18

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.,*
    608 S.E.2d 636 (Ga. 2005) ................................................................................. 19

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.,*
    449 F.3d 377 (2d Cir. 2006) ................................................................................. 8

*Hargrave v. Oki Nursery, Inc.,*
    636 F.2d 897 (2d Cir. 1980) ............................................................................... 15

*Holborn Corp. v. Sawgrass Mut. Ins. Co.,*
    304 F. Supp. 3d 392 (S.D.N.Y. 2018) ............................................................. 7, 8

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.,*
    227 F.3d 8 (2d Cir. 2000) ............................................................................. 13, 14

*Johnson v. Magnolia Pictures LLC,*
    No. 18-CV-9337 (VB), 2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019) ............... 22

*JP Morgan Chase Bank v. Winnick,*
    350 F. Supp. 2d 393 (S.D.N.Y. 2004) .............................................................. 15

*Kennedy v. Columbia Lumber & Mfg. Co.,*
    384 S.E.2d 730 (1989) ....................................................................................... 19

*King Co., Wash. v. IKB Deutsche Industriebank AG,*
    863 F. Supp. 2d 288 (S.D.N.Y. 2012), *rev'd in part on other grounds*, No. 09-
    8387, 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012) ....................................... 16

*LAN/STV v. Martin K. Eby Const. Co.,*
    435 S.W.3d 234 (Tex. 2014) .............................................................................. 19

*Lazebnik v. Apple, Inc.,*
    No. 5:13-cv-4145, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ...................... 20

*Lewis v. AT&T Mobility,*
    2011 Ark. App. 756 (2011) ................................................................................. 18

*Milan Supply Chain Sols. Inc. v. Navistar Inc.,*
    No. W2018-00084-COA-R3-CV, 2019 WL 3812483 (Tenn. Ct. App. Aug. 14,
    2019) .................................................................................................................. 19

*Morrow v. First Nat. Bank of Hot Springs,*
    261 Ark. 568 (1977) ........................................................................................... 18

*Negrete v. Citibank*,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016) ........................................................................ 15, 17

*Princess Cruises, Inc. v. Gen. Elec. Co.*,
    950 F. Supp. 151 (E.D. Va. 1996) ................................................................................. 20

*Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*,
    No. 11-cv-5608, 2013 WL 135216 (S.D.N.Y. Jan. 10, 2013) ......................................... 6

*In re Refco Inc. Sec. Litig.*,
    892 F. Supp. 2d 534 (S.D.N.Y. 2012) ............................................................................ 8

*Rice v. Kawasaki Heavy Indus., Ltd.*,
    No. 07-4031, 2008 WL 4646184 (E.D.N.Y. Oct. 17, 2008) ........................................... 8

*Royal Park Invs., SA/NV v. HSBC Bank USA, Nat'l Assn.*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015) .......................................................................... 14

*Rudolph v. Hudson's Bay Company*,
    No. 1:18-cv-8472, 2019 WL 2023713 (S.D.N.Y. May 7, 2019) ................................ 1, 14, 22

*S. Indep. Bank v. Fred's Inc.*,
    No. 2:15-cv-799, 2019 WL 1179396 (M.D. Ala. Mar. 13, 2019) ................................. 21

*Sackin v. TransPerfect Global, Inc.*,
    278 F. Supp. 3d 739 (S.D.N.Y. 2017) .......................................................................... 15

*SeaComm Federal Credit Union et al., v. Equifax Inc.*,
    No. 1:18-cv-00580, ECF No. 1 (N.D. Ga. filed Feb. 6, 2018) ...................................... 22

*SELCO Cmty. Credit Union v. Noodles & Co.*,
    267 F. Supp. 3d 1288 (D. Colo. 2017) ..................................................................... 12, 16

*Shafran v. Harley-Davidson, Inc.*,
    No. 07-1365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ........................................... 20

*Smith v. Chase Manhattan Bank, USA, N.A.*,
    741 N.Y.S.2d 100 (2d Dep't 2002) .............................................................................. 20

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (N.Y. 1992) ......................................................................................... 17

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162 (3d Cir. 2008) ..................................................................................... 13, 21

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24 (2000) .................................................................................................... 20

*In re SuperValu, Inc.*,
    925 F.3d 955 (8th Cir. 2019) ......................................................................................... 13

*In re TJX Cos. Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009) ......................................................................................... 13

*Travelers Indem. Co. v. Dammann & Co.*,
    594 F.3d 238 (3d Cir. 2010) ......................................................................................... 19

*Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*,
    No. 16-4254, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ................................. 22

*United Guar. Mtg. Indem. Co. v. Countrywide Fin. Corp.*,
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) ................................................................... 19

*Vitolo v. Mentor HIS, Inc.*,
    426 F. Supp. 2d 28 (E.D.N.Y. 2006) ......................................................................... 17

*Webster v. Wells Fargo Bank, N.A.*,
    No. 08-10145, 2009 WL 5178654 (S.D.N.Y. Dec. 23, 2009), *aff'd sub nom.*
    *Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012) .............................................. 5

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    460 F.3d 281, 285 (2d Cir. 2006), *certified question accepted*, 7 N.Y.3d 830
    (2006), *and certified question answered*, 8 N.Y.3d 422 (2007) ............................. 8

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 5

v

Defendants Hudson's Bay Company, Saks Fifth Avenue LLC, Saks & Company LLC, Saks Incorporated, and Lord & Taylor LLC (together, "Hudson's Bay") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.   PRELIMINARY STATEMENT

It has long been the law that when sophisticated parties agree in advance about the allocation of liability and compensation for a potential event, that agreement is binding and exclusive. The agreement cannot then be supplemented by extra-contractual theories of liability. Courts respect the parties' decision to establish an efficient allocation of risks. Enforcing this rule enhances predictability and fairness and allows efficient allocation of risks and loss. This long-established rule requires the Court to dismiss this case.

Plaintiffs are two financial institutions that issue credit or debit cards, sometimes referred to as "payment cards." Plaintiffs allegedly incurred costs following a data security incident at certain Hudson's Bay stores—Saks Fifth Avenue, Saks Off 5TH, and Lord & Taylor. But in order to issue payment cards, Plaintiffs entered into contracts that govern and limit their rights to recover from a merchant, such as Hudson's Bay, in the event of a data security incident. Plaintiffs are therefore precluded from pursuing non-contractual remedies, as the Seventh Circuit concluded just last year in affirming dismissal of a virtually identical action. *Cmty. Bank of Trenton v. Schnuck Markets*, 887 F.3d 803 (7th Cir. 2018). In addition, Plaintiffs failed to state a claim because they did not plausibly link their purported injuries to the Hudson's Bay data security incident. Lastly, Plaintiffs' claim for declaratory judgment fails for the reasons set forth in this Court's decision in *Rudolph v. Hudson's Bay Company*, No. 1:18-cv-8472, 2019 WL 2023713 (S.D.N.Y. May 7, 2019) (Castel, J.).

## II.    STATEMENT OF FACTS[1]

Behind the scenes of the familiar credit or debit card transaction is a series of contracts among the payment card system participants.  The smooth and predictable functioning of these contracts facilitates the convenience that is the hallmark of the payment card systems.

### A.    Participants in the Payment Card System Agree to the Payment Card Rules

The participants in the payment card systems include merchants who accept payment cards for purchases (like Hudson's Bay stores), issuers who issue payment cards (like Plaintiffs), and payment card brands who operate the systems (like Visa and Mastercard).  Am. Compl. ¶¶ 19-20, 83.  These participants are bound together by a series of contracts, rules and standards (the Payment Card Rules), which are referenced in the Amended Complaint.[2]  The Payment Card Rules refer to financial institutions that issue cards as "issuers," "members," or "customers" of the payment card brands.  Visa Core Rules[3] at 801 (definition of issuer as a "member"); MasterCard Rules[4] at 337 (definition of issuer as a "customer").  As members, customers and issuers, the Plaintiffs here ***must*** accept the Payment Card Rules as binding contracts in order to issue payment cards.  Visa Core Rules at 51 (Visa Core Rules "represent a binding contract between Visa and each Member"); MasterCard Rules § 2.1, at 45 (describing standards governing conduct of Customers); *Schnuck Markets*, 887 F.3d at 808 ("[c]ontracts govern all of these relationships").  Hudson's Bay, as a

---

[1] The allegations of the Amended Complaint are taken as true solely for purposes of this motion.
[2] As more fully set forth in Section III.B below, the Court can consider the payment card contracts and rules because they are invoked and incorporated in the Amended Complaint and form a basis of the Plaintiffs' claims.
[3] The Visa Core Rules, excerpts of which are attached as Exhibit A to the Declaration of Gregory T. Parks are publicly available at https://usa.visa.com/support/consumer/visa-rules.html (follow "Visa Core Rules and Visa Product and Service Rules" hyperlink).
[4] The MasterCard Rules, excerpts of which are attached as Exhibit B to the Parks Declaration, are publicly available at https://www.mastercard.us/en-us/about-mastercard/what-we-do/rules.html (follow "Download the MasterCard Rules" hyperlink)

merchant, also agrees to the payment card rules by contracting with an acquiring financial institution. *See* Visa Core Rules § 1.5.2, at 93-94; MasterCard Rules §§ 5.1, 5.2, at 79-82.

### B.    Payment Card Contracts and Rules Govern Recovery in An Incident

The Payment Card Rules govern many things, including the security standards participants must implement and the procedure in the event of a data security incident.  Am. Compl. ¶¶ 65-66 (referencing security standard requirements); Visa Core Rules § 1.10.4, at 121-122; MasterCard Security Rules § 10.1, at 80.[5]  Importantly here, the Payment Card Rules also expressly address an issuer's rights to recover costs following a data security incident at a merchant.  Visa Core Rules §§ 10.10.1, at 582-583 ("An issuer may recover a portion of its operating expenses associated with an Account Data Compromise Event"); MasterCard Security Rules §§ 10.1-10.4, at 80-112 (MasterCard has "the authority to impose assessments, recover costs, and administer compensation, if appropriate, to Customers that have incurred costs, expenses, losses, and/or other liabilities in connection with ADC [Account Data Compromise] events"); *see also Schnuck Markets*, 887 F.3d at 809 ("The contracts that govern both the Visa and MasterCard networks then provide a cost recovery process that allows issuing banks to seek reimbursement for at least some of these losses.").

The comprehensive procedures outlined in the Payment Card Rules for data security incidents include requirements for issuers, acquirers, and merchants regarding investigation, preservation of data, notification to card brand companies, engagement of forensic investigators, and alerts to consumers. Visa Core Rules § 1.10.4, at 121-122; MasterCard Security Rules § 10.1,

---

[5] The MasterCard Security Rules, excerpts of which are attached as Exhibit C to the Parks Declaration, are publicly available at https://www.mastercard.us/en-us/about-mastercard/what-we-do/rules.html (follow "Security Rules and Procedures – Merchant Edition" hyperlink).

at 80.   They also set forth specific procedures for fair and predictable reimbursement and recovery following a data security incident.   *See* Visa Global Compromised Account Recovery Program ("GCAR") Guide[6] at 1 ("Having fair and predictable rules that allocate responsibility for the financial impact of an account data compromise is important for all stakeholders in the Visa payment system.").   Under the Payment Card Rules, issuers like Plaintiffs must reimburse their cardholders for unauthorized transactions and ensure cardholders have "zero liability" for fraudulent charges.   Visa Core Rules § 1.4.6.1, at 87-88; MasterCard Rules § 6.3, at 106; *see also Schnuck Markets*, 887 F.3d at 808-09 (as part of these rules, "[i]n joining the card payment system, issuing banks—including our plaintiffs here—agree to indemnify their customers in the event that a data breach anywhere in the network results in unauthorized transactions.").   Issuers like Plaintiffs may then seek reimbursement through Visa or MasterCard for the associated expenses, which Visa and MasterCard can in turn recover from a merchant retailer that had the compromise. Visa Core Rules § 10.10.1, at 582; Visa GCAR Guide at 1-3; MasterCard Security Rules § 10.2.5.3, at 91-94.

This process is exemplified by Visa's GCAR program, which "offers a balanced, simplified, and cost-effective recovery process for Visa clients worldwide" by "enabl[ing] issuers to recover a portion of costs associated with counterfeit magnetic-stripe losses and/or PIN data fraud losses, as well as a portion of the associated operating expenses, for qualified account data compromise events."   Visa GCAR Guide at 1.   This process also imposes limits of liability that issuers such as the Plaintiffs have agreed to as part of the program.   For example, the Visa process

---

[6] The Visa GCAR Guide is attached as Exhibit D to the Parks Declaration, and is publicly available at http://www.paymentworld.com/docs/training/visa/what-every-merchant-should-know-GCAR-VOL-091213-final.pdf.

limits liability "for fraud costs associated with a data compromise event to a maximum window of time." *Id.* It also only allows recovery when certain criteria are met, including a violation of PCI-DSS rules and the existence of "elevated" fraud levels following the event. *Id.* at 3. Finally, it has a liability cap based on the relevant merchant retailer's annual Visa sales. *Id.* Despite this comprehensive contractual system and its limits, Plaintiffs here, like the plaintiffs in *Schnuck Markets*, "seek reimbursement for their losses above and beyond the remedies provided under the card network contracts." 887 F.3d at 811.

## III.   STANDARD OF REVIEW

### A.      Rule 12(b)(6)

On a motion to dismiss a complaint under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Indeed, a claim is facially plausible only when its factual allegations allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *See id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555-56.

### B.      The Court Can Properly Consider the Payment Card Rules

"[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Webster v. Wells Fargo Bank, N.A.*, No. 08-10145, 2009 WL 5178654, at *1 (S.D.N.Y. Dec. 23, 2009), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012) ("On a motion to dismiss, the Court may consider all

documents attached to or incorporated by reference into the Complaint, documents Plaintiffs possessed or knew of when bringing suit, and matters of which judicial notice may be taken.").

The Court may properly consider the Payment Card Rules in deciding this motion because Plaintiffs' Amended Complaint invokes, incorporates and indeed is based upon the Payment Card Rules. Plaintiffs repeatedly reference the data security standards that are part of the Payment Card Rules. Am. Compl. ¶¶ 65-67, 75, 141-143, 150, 157. Those standards are enforced by Visa and MasterCard through the Payment Card Rules. *See* Visa Core Rules § 1.10.4.1, at 121-122 (requiring compliance with PCI-DSS standards); MasterCard Security Rules § 10.3.1, at 101 (same). Moreover, one of the main points of those data security standards is to establish when an issuer may be entitled to recover costs under the Payment Card Rules. Visa Core Rules § 10.10.1, at 582; Visa GCAR Guide at 1-3; MasterCard Security Rules § 10.2.5.3, at 91-94. The Amended Complaint also has multiple references to CAMS alerts and other alerts issued by Visa, which are part of the incident response system established by the Payment Card Rules. *See* Am. Compl. ¶¶ 38, 41, 42, 43. The data security standards and processes upon which Plaintiffs' claims are based are governed by the Payment Card Rules, and Plaintiffs were well aware of the Payment Card Rules when they filed this lawsuit. Moreover, Plaintiffs' claims invoke and depend upon the entire system that allows the acceptance and processing of payment card transactions. Accordingly, the Court can and should consider the Payment Card Rules. *See Schnuck Markets*, 887 F.3d at 809 ("We can properly consider the remedies provided in the card brand rules[.]"); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1083 (D. Colo. 2018) (considering Payment Card Rules on motion to dismiss even though plaintiffs "artfully plead[ed] their claims without stating the role [ ] that payment card networks play in a payment card transaction" because "the existence of a relationship between the parties depends entirely on the use of payment cards,

and thus documents which may govern that relationship are central to Plaintiffs' negligence claim").

The Court can also properly take judicial notice of the Payment Card Rules because they are publicly available on the Visa and MasterCard websites, which are authentic Internet sources, and courts "generally [have] discretion to take judicial notice of internet material." *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 670 (S.D.N.Y. 2017); *see also Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-cv-5608, 2013 WL 135216, at *4 (S.D.N.Y. Jan. 10, 2013) (taking judicial notice of documents on the Internet and stating, "it is well established that courts may take judicial notice of publicly available documents on a motion to dismiss"); *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (Castel, J.) ("Courts may [ ] take judicial notice of information contained on websites where the authenticity of the site has not been questioned.").

## C.    Choice of Law

Although this case may eventually present complex choice of law questions, for purposes of this motion, there is no conflict among the relevant jurisdictions on the basic principles that require dismissal here.  Plaintiffs are financial institutions located in Arkansas and New York. Am. Compl. ¶¶ 9, 10.  They are suing Hudson's Bay, a Canadian company that maintains its U.S. headquarters in New York.  *Id.* ¶¶ 11.  The data security incident caused malware to be installed on point of sale terminals at stores nationwide.  *Id.* ¶¶ 11-15, 31.  Plaintiffs claim that they suffered harm by having to reimburse fraud costs and replace cards in Arkansas, California, Georgia, Illinois, New Jersey, New York, Oklahoma, South Carolina, Tennessee, Texas, and Virginia.  *Id.* ¶¶ 9, 10.

As a federal court sitting in diversity jurisdiction, this Court must apply the choice of law rules of its forum state of New York.  *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d

392, 398 (S.D.N.Y. 2018).  Under New York's choice of law rules, courts first determine whether there is an actual conflict between the laws of the relevant choices.  *In re Refco Inc. Sec. Litig.*, 892 F. Supp. 2d 534, 536 (S.D.N.Y. 2012).  If there is an actual conflict, New York courts then consider a variety of factors, including which state has the greatest interest in the matter, whether the case sounds in contract or tort, and where various events occurred.  *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 383-84 (2d Cir. 2006).

With respect to cases sounding in tort, New York applies a specific analysis for "conduct-regulating" claims involving standards of care, like the alleged negligence claims involved here.[7] Under these rules, courts look to the last event that occurred that is necessary to make a defendant potentially liable.  *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006), *certified question accepted*, 7 N.Y.3d 830 (2006), *and certified question answered*, 8 N.Y.3d 422 (2007); *Rice v. Kawasaki Heavy Indus., Ltd.*, No. 07-4031, 2008 WL 4646184, at *5 (E.D.N.Y. Oct. 17, 2008).  In some instances, Courts recognize that some discovery may be necessary to make this determination.  *See, e.g.*, *Fed. Ins. Co. v. Weinstein*, No. 18 CIV. 2526, 2019 WL 1407455, at *4-6 (S.D.N.Y. Mar. 28, 2019).

If this case proceeds beyond the present motion, it will be necessary to determine through discovery what happened where and to apply the laws of different states.  Different states have different elements of causes of action and different remedies available.  But, for purposes of this motion, the Court need not go beyond the first step of determining whether there is an actual conflict.  The simple proposition that controls this motion is that when sophisticated parties agree by contract to an allocation of liability for an incident, that contract governs liability exclusively

---

[7] Counts I through V of Plaintiffs' Amended Complaint assert tort claims or claims sounding in tort.

and extra-contractual claims are not allowed.  As more fully set forth below, this proposition is the law in every state that could be a choice of potential substantive law.

## IV.    ARGUMENT

### A.    Plaintiffs Cannot Pursue Non-Contract Claims Where a Contract Governs.

#### 1.    Courts Have Dismissed Identical Claims Brought by Financial Institution Plaintiffs Against Retailers.

Last year, the Seventh Circuit[8] examined virtually identical facts and dismissed a class action involving a data security incident affecting payment card data at Schnuck Markets grocery stores.  The plaintiffs there were also financial institutions who alleged they issued payment cards to consumers who used them at Schnuck Markets.  After the incident, the financial institutions there, as here, claimed they suffered harm in the form of reissuing cards and paying for fraudulent charges on the cards used at Schnuck Markets.  *See Schnuck Markets*, 887 F.3d at 807.  The plaintiffs in *Schnuck Markets* asserted common law claims for negligence, negligence *per se*, unjust enrichment, breach of implied contract and third party beneficiary, and statutory claims under Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Personal Information Protection Act.  *Id.* at 816-26.  Plaintiffs here similarly assert common law claims for negligence, negligence *per se* and unjust enrichment, and statutory claims under New York and California law.  Am. Compl., Counts I-V.

The Seventh Circuit analyzed the contracts and rules governing the payment networks at length to determine whether the law offered a "remedy to card-holders' banks against a retail merchant who suffered a data breach, above and beyond the remedies provided by the network of

---

[8] Although the Second Circuit has not yet addressed extra-contractual claims asserted by financial institutions against a retail merchant in the context of a data security incident, several other courts have.

contracts that link merchants, card-processors, banks and card brands to enable electronic card payments." *Schnuck Markets*, 887 F. 3d at 807.   The Seventh Circuit's review of the contracts showed that all parties in the payment card system agreed "to take on certain responsibilities and to subject themselves to specified contractual remedies." *Id.* at 808.   For example, the financial institution plaintiffs, there as is the case here, agreed to indemnify their customers in the event a data breach anywhere in the network resulted in unauthorized transactions.   *Id.* at 809. Importantly—and like here—the contracts also required that the acquiring banks and their agents, including merchants like Schnuck Markets, agreed to abide by the PCI-DSS standards discussed above. *Id.*   The contracts also included provisions specifying how liabilities resulting from any breaches would be handled, expressly allowing the issuing banks like the plaintiffs to recover at least some of their costs and expenses. *Id.*   The court emphasized that the specific details of the contractual remedies did not matter—instead, "[w]hat is important is that they exist at all, by agreements among the interested parties." *Id.*

Although the case called for the application of Illinois and Wisconsin law, the Seventh Circuit recognized that "[f]or more than fifty years, state courts have generally refused to recognize tort liabilities for purely economic losses inflicted by one business on another where those businesses have already ordered their duties, rights, and remedies by contract." *Id.* at 812 (citing cases).   This is because courts "trust the commercial parties interested in a particular activity to work out an efficient allocation of risks among themselves in their contracts." *Id.*   "The plaintiff banks seek additional recovery because they are disappointed by the reimbursement they received through the contractual card payment systems they joined voluntarily." *Id.* at 815.   But the Court saw "no reason to intrude into the parties' allocation of the risk when bargaining should be sufficient to protect the parties' interests, and where additional tort law remedies would act as

10

something of a wild card to upset their expectations." *Id* at 812.  The Seventh Circuit concluded that it would affirm the district court's dismissal of the case, declining to "recognize any of the plaintiff banks' theories to supplement their contractual remedies for losses they suffered as a result of the Schnucks data breach." *Id*. at 826.

The same Payment Card Rules the Seventh Circuit cited in precluding the financial institutions' claims in *Schnuck Markets* also preclude Plaintiffs' claims here.  These Rules govern the rights, obligations and remedies for payment card system participants in the event of a data security incident like the Hudson's Bay incident.  Visa Core Rules §§ 10.10.1, at  582-583 ("An issuer may recover a portion of its operating expenses associated with an Account Data Compromise Event"); MasterCard Security Rules §§ 10.1-10.4, at 80-112 (MasterCard has "the authority to impose assessments, recover costs, and administer compensation, if appropriate, to Customers that have incurred costs, expenses, losses, and/or other liabilities in connection with ADC [Account Data Compromise] events").  MasterCard, for example, explains that "[e]ach Customer benefits from, and depends upon, the integrity of that [cost recovery] system. . . . [and] therefore acknowledges that Mastercard has a compelling interest in adopting, interpreting, and enforcing its Standards to protect against and respond to ADC [Account Data Compromise] events and Potential ADC Events."  MasterCard Security Rules §§ 10.2.1, at 80.  Visa similarly has specific procedures for a fair and predictable reimbursement and recovery following a data security incident because "[h]aving fair and predictable rules that allocate responsibility for the financial impact of an account data compromise is important for all stakeholders in the Visa payment system."  *See* Visa GCAR Guide at 1.  To that end, the Visa process limits merchants' liability for fraud costs associated with a data compromise, including by only allowing recovery when certain

criteria are met, including violation of PCI-DSS and "elevated" fraud levels.  Visa GCAR Guide at 1, 3.

Despite agreeing to these limitations on liability, including a prohibition on recovery where no "elevated" fraud levels are observed following an incident, Plaintiffs now want to evade those contractual limitations.  They seek additional recovery through tort or other claims, presumably "because they are disappointed by the reimbursement they received through the contractual card payment systems they joined voluntarily."  *Schnuck Markets*, 887 F.3d at 815.  Those efforts undermine the purpose and policy behind the cost recovery process, including limitations on reimbursement, established by the Payment Card Rules.  *Id*.  Like the Seventh Circuit, this Court should not allow Plaintiffs to supplement their agreed-upon contractual remedies.  *Id.* at 826.

More recently, a Colorado district court followed *Schnuck Markets* in dismissing a case brought by financial institutions following a data security incident at Chipotle restaurants. *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1085 (D. Colo. 2018).  As in *Schnuck Markets*, the *Bellwether* court reviewed the payment card network contracts and rules and similarly concluded they presented the sole remedy for the plaintiff's claims. Although the plaintiffs argued that the PCI-DSS were only a minimum standard of care, the court pointed out that plaintiffs had essentially "agreed to the PCI DSS security measures" so that "the source of any duty regarding data security arises under the contract."  *Id*. at 1084.   The court noted that other courts had also dismissed data breach cases brought by financial institutions.  *Id.* at 1084 (citing *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 (D. Colo. 2017) ("This Court has no business sidestepping the agreements that sophisticated commercial entities like plaintiffs and Noodles & Company voluntarily entered to allocate the risk of payment-card fraud.")).   The *Bellwether* court also reviewed the *Schnuck Markets* decision and found "the

Seventh Circuit's reasoning persuasive," holding that "[n]o amount of amendment of the complaint would change the essential fact that the payment card network agreements impose the relevant duties at issue here and also govern the relief available to the allegedly aggrieved parties." *Id.* at 1085.

In addition to the *Bellwether* decision, the First, Third and Eighth Circuit Courts of Appeals are aligned with the Seventh Circuit in recognizing that in the context of a data security incident, liabilities for losses to financial institutions that might have resulted from the incident are provided for by contract, not through other means. *See In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009) (affirming dismissal of negligence claims asserted by financial institution against retailer in connection with payment card security incident as barred by the economic loss doctrine); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 178 (3d Cir. 2008) (same); *In re SuperValu, Inc.*, 925 F.3d 955, 965 (8th Cir. 2019) (recognizing that "federal law and card-issuer contracts ordinarily absolve the consumer from any obligation to pay the fraudulent charge"). The decisions of these courts, addressing the same claims under the same circumstances that are present here, further support dismissal of Plaintiffs' claims.

### 2. Plaintiffs' Extra-Contractual Claims Require Dismissal Under All of the State Laws Potentially at Issue Here.

Plaintiffs claim that they had to replace payment cards in Arkansas, California, Georgia, Illinois, New Jersey, New York, Oklahoma, South Carolina, Tennessee, Texas and Virginia. Am. Compl. ¶¶ 9, 10. Like the Seventh Circuit in *Schnuck Markets*, each of these states recognize the same principle that contracts between sophisticated parties governing their duties, rights and remedies are the exclusive source of recovery.

a.      **New York**

New York courts "prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *See, e.g., Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000) (applying New York law). Originally part of the "economic loss rule," this doctrine has more recently focused on preventing recovery in tort where a party's rights are governed by contract as a matter of policy. *See id.* at 16. The doctrine, therefore, "protects parties' abilities to allocate risk by mutual agreement and thereby form reliable expectations about their potential financial exposure with respect to the duties and liabilities that they have contractually assumed." *BNP Paribas Mtg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013); *Royal Park Invs., SA/NV v. HSBC Bank USA, Nat'l Assn.*, 109 F. Supp. 3d 587, 598 (S.D.N.Y. 2015) (citation omitted) ("This doctrine serves two purposes: (1) it protects defendants from disproportionate, and potentially limitless, liability; and (2) it disentangles contract and tort law by restricting plaintiffs who suffer economic losses to the benefits of their bargains."). Determining whether the economic loss doctrine applies "encompasses a focused duty analysis that is a policy-driven scrutiny of whether a defendant had a duty to protect a plaintiff against purely economic losses." *Royal Park Invs., SA/NV*, 109 F. Supp. 3d at 598 (internal quotations and citation omitted).[9] Consistent with this purpose, New York courts have held that "a simple breach of contract is not to be considered a tort unless a legal

---

[9] This Court's decision in *Rudolph* regarding the *consumer* claims also recognized that the relationship between commercial parties may exclude tort-based theories. This Court observed that "[i]n some circumstances, such as a construction accident that causes widespread damage and disruption, New York courts have engaged in 'policy-driven line-drawing' to conclude that defendants owed a duty 'to those who have suffered personal injury or property damage,' and **not** to those who suffered an 'economic loss alone . . . .'" *Rudolph*, 2019 WL 2023713 at *9 (emphasis added) (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001)). In the consumer case, Defendants had not "explained how such a limitation on negligence liability could apply to the data breach alleged in this case." *Id.* Here, however, the payment card networks' contracts and the interest in providing predictability, certainty and fairness provide exactly the type of policy rationale for the line drawing contemplated by *532 Madison*.

duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004) ("[I]f the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort.") (quoting *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980)).

Under New York law, for Plaintiffs to plead a tort claim in light of the network of contracts binding them and Hudson's Bay, they must allege an independent duty that "spring[s] from circumstances extraneous to, and not constituting elements of," those contracts. *Clark–Fitzpatrick, Inc.*, 516 N.E.2d at 194; *cf. Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 749-50 (S.D.N.Y. 2017) (allowing tort claim to proceed because complaint alleged a breach of duty regarding disclosure of an employee's personal information that was not addressed in Defendant's operative employment contracts with Plaintiffs). Where the alleged duty is contracted for in the relevant agreement, tort claims must be dismissed. *BNP Paribas Mtg. Corp.*, 949 F. Supp. 2d at 505 (dismissing tort claims where "[p]laintiffs fail to identify any duty . . . independent of those contracted for in the [relevant] Agreements."); *Avazpour Networking Servs., Inc. v. Falconstar Software, Inc.*, 937 F. Supp. 2d 355 (E.D.N.Y. 2013); *Negrete v. Citibank*, 187 F. Supp. 3d 454, 471 (S.D.N.Y. 2016) (holding that all four of the alleged duties Plaintiffs claimed were breached "emanated from the [relevant] agreements").

Plaintiffs, here, claim that Hudson's Bay owed them an "independent duty" to "use and exercise reasonable care in obtaining and processing Plaintiffs' and the Class's Payment Card Data" and to "prevent the foreseeable risk of harm to others." Am. Compl. ¶¶ 105, 106, 107. Plaintiffs allege that this duty is "independent of any duty Hudson['s] Bay owed as a result of its contractual obligations." *Id.* ¶ 105. Although artfully pleaded, the "independent" duties identified

by Plaintiffs are the same duties required by the network of contracts that govern the payment card system and the parties' relationship.  Am. Compl. ¶¶ 65-68 (reciting PCI DSS data security obligations applicable to Hudson's Bay).  For example, the Visa and MasterCard rules require merchants like Hudson's Bay to comply with the twelve PCI DSS information security requirements in connection with processing payment cards from customers, which include detailed and comprehensive requirements to maintain secure payment card processing systems and protect cardholder data.  *See* Visa Core Rules § 1.10.4.1, at 121-122; MasterCard Security Rules § 10.1, at 80 (requiring adherence to the PCI DSS in connection with "stor[ing], process[ing], or transmit[ting] Card, Cardholder, Transaction data").  In similar cases, courts have held that the very same duties alleged by Plaintiffs are "***not*** independent of [a merchant's] contractual obligation to comply with the PCI DSS" and therefore, do not support claims sounding in tort by a financial institution against a merchant arising out of a payment card security incident.  *See, e.g., SELCO Comm. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1293-95 (D. Colo. 2017) (emphasis added) (dismissing financial institutions' tort claims against merchant); *Bellwether Comm. Credit Union*, 353 F. Supp. 2d at 1084.  Accordingly, Plaintiffs have failed to allege any "independent duty" owed by Hudson's Bay sufficient to maintain their tort claims.

Other exceptions to the economic loss rule recognized by New York courts—namely, circumstances where a "special relationship" exists between the parties or where there is a significant public interest to justify finding an independent duty—are not present here.  First, courts have declined to find any "special relationship" where the parties, like Plaintiffs and Hudson's Bay, are "sophisticated commercial parties."  *BNP Paribas Mtg. Corp.*, 949 F. Supp. 2d at 507 (no special relationship as both parties were "sophisticated commercial parties.").  The "special relationship" exception to the economic loss doctrine instead "has been read narrowly to

apply to professionals that might be liable for malpractice—such as attorneys, engineers, accountants, or architects." *King Co., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 304 (S.D.N.Y. 2012) (citing *Hydro Invs.*, 227 F.3d at 18), *rev'd in part on other grounds*, No. 09-8387, 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012); *see also Avazpour Networking Servs., Inc.*, 937 F. Supp. 2d at 363-65 ("[A] separate duty of care sufficient to support a claim in tort among contracting parties has not been found where, for example, a claim for professional malpractice does not lie.") (citations omitted).  Here, there is no professional or fiduciary relationship between Plaintiffs as issuing banks and Hudson's Bay as a merchant. *Negrete*, 187 F. Supp. 3d at 473 (finding no "special relationship" between the parties where there is no fiduciary or professional relationship between them); *see also Cmty. Bank of Trenton v. Schnuck Markets*, 210 F. Supp. 3d 1022, 1039 (S.D. Ill. 2016) (finding no special relationship or fiduciary relationship between issuing bank and merchant).

Moreover, there is no basis to find an independent duty "where the nature of the damages alleged, however significant to the parties, do not implicate a larger public interest." *Avazpour Networking Servs., Inc.*, 937 F. Supp. 2d at 364  (citing *Vitolo v. Mentor HIS, Inc.*, 426 F. Supp. 2d 28, 35-36 (E.D.N.Y. 2006) ("imposition of an independent duty of care in an arms-length business transaction is reserved for the most serious of situations directly affecting the public at large, and not sophisticated parties.")).  Here, the damages alleged by Plaintiffs in the form of costs to reissue payment cards and reimburse fraudulent transactions do not implicate a larger public interest, which is typically reserved for instances where the nature of the harm is "catastrophic" and the injury resulted from "an abrupt, cataclysmic occurrence." *Id.* (citing *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540 (N.Y. 1992)) (holding that provider of central station fire alarm monitoring

services could be held liable in tort for failing to timely report a fire signal to the fire department).

Accordingly, Plaintiffs' claims fail under New York law.

        **b.**        **Arkansas**

      Arkansas courts similarly engage in a duty-based analysis in determining whether to impose tort liability despite the existence of a contract, and have declined to impose a duty on a merchant who accepts payment cards beyond what is required by the payment card network of contracts and rules.  For example, in *Lewis v. AT&T Mobility*, the plaintiff claimed that AT&T acted negligently when it allowed a third party to use his debit card to pay a bill on AT&T's website.  *See* 2011 Ark. App. 756 (2011).  The plaintiff claimed that AT&T owed him a duty to obtain his permission or his signature in order to process a "card-not-present" transaction.  *Id.* at *5.  The court looked to the applicable Visa Rules providing guidelines on accepting card-not-present transactions, which did not require AT&T to do either of those things, and affirmed dismissal of plaintiff's claims holding that he failed to show that AT&T owed him a duty "greater than what was required" under the Visa rules.  *Id.* at *5-6.  Should Arkansas law apply to Plaintiff Arkansas Federal Credit Union's common law tort claims here, this Court should similarly dismiss those claims for failing to sufficiently allege any duty greater than what is required of Hudson's Bay by the PCI-DSS.

      Moreover, while they do not reference the rule as the "economic loss doctrine," Arkansas courts do not allow tort claims based on a defendant's failure to act appropriately where the alleged conduct is governed by contract.  *Filat v. Rand*, 2015 Ark. App. 316 (2015) ("a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguishable from an affirmatively wrongful act (misfeasance))"; *Morrow v. First Nat. Bank of Hot Springs*, 261 Ark. 568, 569 (1977) (same).  Plaintiffs here allege that Hudson's Bay's "fail[ed] to maintain reasonable

security measures" (Am. Compl. ¶ 107) and, therefore, such alleged "nonfeasance" cannot proceed under a tort-based theory of liability where the network of contracts govern Plaintiffs' recovery.

### c. The Nine Other States in Which Plaintiffs' Members Are Located Similarly Follow This Same Principle.

Should the Court look to the laws of the nine other states potentially at issue here—California, Georgia, Illinois, New Jersey, Oklahoma, South Carolina, Tennessee, Texas and Virginia—the same relevant principle applies, requiring dismissal of Plaintiffs' tort-based claims. *See, e.g., United Guar. Mtg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1194 (C.D. Cal. 2009) ("Contract law allows parties to estimate costs and allocate risks in advance. Where sophisticated parties expressly agree about how to handle [such risks], they face a particularly difficult time asserting negligence."); *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005) ("The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."); *Schnuck Markets, Inc.*, 887 F.3d 803, 813 (7th Cir. 2018) ("Even in the absence of an alternative remedy in contract, Illinois does not permit tort recovery for businesses who seek to correct the purely economic 'defeated expectations of a commercial bargain.'"); *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 248 (3d Cir. 2010) ("New Jersey courts have consistently held that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could have been the subject of their negotiations."); *Am. Fid. Assurance Co. v. Bank of New York Mellon*, No. 11-1284-D, 2018 WL 6582381, at *6 (W.D. Okla. Oct. 31, 2018) (holding that where the duties to be performed by the parties are provided by the contract between the parties, "a negligence claim cannot proceed."); *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 737 (1989) (economic loss rule applies "where duties are created

solely by contract.  In that situation, no cause of action in negligence will lie."); *Milan Supply Chain Sols. Inc. v. Navistar Inc.*, No. W2018-00084-COA-R3-CV, 2019 WL 3812483, at *7 (Tenn. Ct. App. Aug. 14, 2019) ("We have emphasized that the economic loss rule requires parties to live by their contracts rather than to pursue tort actions for purely economic losses. . . ."); *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234 (Tex. 2014) ("Where contracts might readily have been used to allocate the risk of a loss . . . a duty to avoid the loss is unlikely to be recognized in tort—not because the economic loss rule applies, but simply because courts prefer, in general, that economic losses be allocated by contract where feasible."); *Princess Cruises, Inc. v. Gen. Elec. Co.*, 950 F. Supp. 151, 155 (E.D. Va. 1996) ("Almost any contract breach can be conceived of in terms of a negligent or intentional tort claim. . . . But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions.").

### B.    Plaintiffs Fail to Plausibly Allege Causation and Damages.

Even if Plaintiffs' claims were not foreclosed by their contracts, their conclusory allegations of causation and damages do not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Each of the Plaintiffs' causes of action requires them to plead an injury caused by Hudson's Bay.  *See, e.g.*, *Shafran v. Harley-Davidson, Inc.*, No. 07-1365, 2008 WL 763177, at *2 n.2 (S.D.N.Y. Mar. 20, 2008) ("Actual injury is an element of negligence."); *Lazebnik v. Apple, Inc.*, No. 5:13-cv-4145, 2014 WL 4275008, at *2 (N.D. Cal. Aug. 29, 2014) (the UCL requires "the plaintiff to show that he or she has suffered an 'economic injury.'"); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (to establish a claim under GBL § 349, a plaintiff must plead that she "suffered injury as a result of the deceptive act"); *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (2d Dep't 2002) (to state a cause of

action for unjust enrichment, "a plaintiff must allege that [she] conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating the plaintiff therefor.").

Plaintiffs fail to plausibly allege facts connecting their injuries to the payment card security incident at Hudson's Bay.  To the contrary, the Amended Complaint highlights how common payment card incidents are, alleging that "[o]ver the last several years, numerous data breaches have occurred at large retailers nationwide, including Target, Home Depot, Eddie Bauer, Sally Beauty, Harbor Freight Tools, and Kmart, among many others" and that "[e]ach of these massive data breaches involved malware placed on each merchant's POS system."  Am. Compl. ¶¶ 23-24. Plaintiffs fail to allege any **facts** linking their alleged reimbursement of a fraudulent charge, replacement of a credit or debit card, or receipt of a phone call from a cardholder to the Hudson's Bay payment card security incident—as opposed to any of the number of other breach incidents referenced in their Amended Complaint.  *Id.* ¶¶ 9, 10.  For instance, Plaintiffs do not even allege that the cards they replaced were used at the Hudson Bay's stores at issue here.  Nor do they allege timing that would give rise to a plausible inference that the cards were used at those stores during the relevant time period and then experienced fraudulent charges after that time period.  Instead, the Plaintiffs allege only that they received a series of alerts from the payment card brands notifying them of an incident affecting Hudson's Bay and certain cards.  *Id.* ¶ 38.  They do not allege that any of the cards in those alerts are the cards that allegedly sustained fraudulent charges or needed to be replaced.  Even if they did, a payment network alert "is purely informational and does not mean that the accounts listed had been compromised."  *See Sovereign Bank*, 533 F.3d at 166 n.3; *see also S. Indep. Bank v. Fred's Inc.*, No. 2:15-cv-799, 2019 WL 1179396, at *3 (M.D.

Ala. Mar. 13, 2019) ("CAMS alerts do not say whether fraudulent activity occurred on a card.").

Thus, Plaintiffs have done nothing to allege facts that would plausibly support causation.

Underscoring this pleading failure, Plaintiff Summit Federal Credit Union is currently a named plaintiff in a class action against Equifax, asserting the same tort-based claims and seeking to recover for the same alleged injuries as a result of the Equifax breach incident, which Summit alleged had an overlapping time period as the payment card incident affecting Hudson's Bay. *See* Am. Compl. ¶¶ 10, 38; *SeaComm Federal Credit Union et al., v. Equifax Inc.*, No. 1:18-cv-00580, ECF No. 1 (N.D. Ga. filed Feb. 6, 2018). Summit pleads no facts to eliminate the possibility that any alleged injuries it suffered were caused by the Equifax breach, or some other breach that may have impacted its cards. Without any factual allegations showing that the Plaintiffs' alleged damages are a result of the Hudson's Bay incident, Plaintiffs fail to state a claim upon which relief may be granted and their Amended Complaint must be dismissed.

### C.    Plaintiffs' Declaratory Judgment "Claim" Must Be Dismissed.

As in *Rudolph*, Plaintiffs style a request for a declaratory judgment and for injunctive relief as a separate claim. Am. Compl. ¶¶ 153-160. Declaratory judgments and injunctive relief are legal remedies; it is well settled that neither constitutes an independent cause of action. *Johnson v. Magnolia Pictures LLC*, No. 18-CV-9337 (VB), 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (dismissing declaratory judgment claim because "[t]he Declaratory Judgment Act does not create an independent cause of action. Rather, '[i]ts operation is procedural only—to provide a form of relief previously unavailable.'" (citation omitted)); *Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, No. 16-4254, 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) ("Plaintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action."). Moreover, as this Court previously held in *Rudolph*, the relief sought is duplicative of the Plaintiffs' claims for negligence and, therefore, should be

dismissed.  *See Rudolph*, 2019 WL 2023713, at *15 (dismissing claim under the Declaratory Judgment Act).

## V.    CONCLUSION

For each of the reasons stated above, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.


Dated:  November 4, 2019                    Respectfully submitted,

                                            MORGAN, LEWIS & BOCKIUS LLP


                                            */s/ Kenneth I. Schacter*
                                            Kenneth I. Schacter
                                            Jawad B. Muaddi
                                            101 Park Avenue
                                            New York, NY 10178
                                            Tel: (212) 309-6000
                                            Fax: (212) 309-6001
                                            kenneth.schacter@morganlewis.com
                                            jawad.muaddi@morganlewis.com

                                            Gregory T. Parks (*admitted pro hac vice*)
                                            Ezra D. Church (*admitted pro hac vice*)
                                            Kristin M. Hadgis (*admitted pro hac vice*)
                                            1701 Market Street
                                            Philadelphia, PA 19103
                                            Tel: (215) 963-5000
                                            Fax: (215) 963-5001
                                            gregory.parks@morganlewis.com
                                            ezra.church@morganlewis.com
                                            kristin.hadgis@morganlewis.com

                                            *Attorneys for Defendants Hudson's Bay Company,*
                                            *Saks Fifth Avenue LLC, Saks & Company LLC,*
                                            *Saks Incorporated, and Lord & Taylor LLC*