# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARKANSAS FEDERAL CREDIT UNION and THE SUMMIT FEDERAL CREDIT UNION, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> HUDSON'S BAY COMPANY, SAKS FIFTH AVENUE LLC, SAKS & COMPANY LLC, SAKS INCORPORATED, and LORD & TAYLOR, LLC, <br><br> Defendants. | Case No. 19-cv-4492 (PKC) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 2

     A.    Factual Background ................................................................................. 2

     B.    Procedural History .................................................................................. 2

     C.    Class Counsel's Investigation ................................................................ 4

     D.    Summary of the Settlement .................................................................... 5

           1.    The Settlement Class.................................................................. 5

           2.    Benefits to Settlement Class Members ..................................... 5

           3.    Notice to Settlement Class and Claims Process........................ 6

                 a.    Notice Program......................................................... 6

                 c.    Claims Process ......................................................... 7

                 d.    Distribution Plan....................................................... 8

           4.    Notice & Administration Costs, Service Awards, and Attorneys' Fees ............................................................................ 9

           5.    Release ....................................................................................... 9

III.  ARGUMENT..................................................................................................... 9

     A.    Legal Standard........................................................................................ 9

     B.    The Settlement Meets the Preliminary Approval Standard..................... 10

           1.    The Settlement Is Procedurally Fair as the Product of Good Faith, Informed, Arm's-Length Negotiations ........................... 10

           2.    The Settlement Is Substantively Fair, Reasonable, and Adequate.................. 11

                 a.    Complexity, Expense, and Likely Duration of the Litigation .............. 11

                 b.    The Reaction of the Class to the Settlement.......................... 12

                 c.    The Stage of the Proceedings and Amount of Discovery ..................... 12

                 d.    The Risks of Establishing Liability and Damages ................. 13

e.      The Risks of Maintaining the Class Action Through Trial ...................14

f.      The Ability of Defendant to Withstand a Greater Judgment.................14

g.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation ...........................................................................15

C.      Certification of the Settlement Class Is Appropriate...................................16

    1.      Numerosity.........................................................................................17

    2.      Commonality......................................................................................17

    3.      Typicality ...........................................................................................18

    4.      Adequacy ...........................................................................................18

    5.      Injunctive Relief Under Rule 23(b)(2).............................................19

    6.      Predominance.....................................................................................20

    6.      Superiority .........................................................................................21

D.      Appointment of Class Counsel....................................................................21

E.      Adequacy of the Proposed Notice Program ................................................22

F.      The Plan of Allocation ................................................................................23

G.      The Court Should Stay the Action and Schedule a Final Approval Hearing ......................................................................................................23

IV.   CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..............................................................................................20, 21

*Ballinger v. Advance Magazine Publishers, Inc.*,
No. 13 Civ. 4036(HBP), 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ..........................13, 15

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)..........................................................................................20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger & Integrated Res.*,
*Inc.*, 209 F.3d 43 (2d Cir. 2000) ..................................................................................11, 13

*Cunningham v. Cornell Univ.*,
16-CV-6525 (PKC), 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (Castel, J.).........................18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)..........................................................................................15

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..........................................................................................16

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) ...................................................................................20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................................12

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ...................................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ..........................................10

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)..........................................................................................18

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019) ...........................................................................15, 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)..........................................................................................18

iii

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)................................................................................16

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................................16

*In re Sinus Buster Prods. Consumer Litig.*,
    No. 12-CV-2429 (ADS), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)..............12

*In re: Target Corp. Customer Data Sec. Breach Litig.*,
    No. 0:14-md-02522 (D. Minn. Apr. 11, 2016), ECF No. 745 ..............................15

*In re U.S. Foodserv. Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013)..............................................................................21

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)..............................................................................19

*In re Warner Chilcott Ltd. Secs. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).......................12, 22

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014) (Oetken, J.) .........................................................17

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ....................15

*Lizondro-Garcia v. Kefi LLC*,
    300 F.R.D. 169 (S.D.N.Y. 2014) ....................................................................16

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................23

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)..............................................................................17

*McBean v. City of N.Y.*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ..............................................................11, 20

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)............................................................................20

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..............................................................................16

iv

*Park v. The Thomson Corp.*,
   No. 05 Civ. 2391 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008).................................14

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982)..................................................................................................12

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..................................................................................................18

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)..................................................................................................18

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8831 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..............................14

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)....................................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................................16, 17, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................................10

**Statutes, Rules & Regulations**

Federal Rules of Civil Procedure
   Rule 23 ...............................................................................................................................16, 22
   Rule 23(a)..........................................................................................................................16, 19
   Rule 23(a)(1)..........................................................................................................................17
   Rule 23(a)(2)..........................................................................................................................17
   Rule 23(a)(3)..........................................................................................................................18
   Rule 23(a)(4)..........................................................................................................................18
   Rule 23(b) ..........................................................................................................................16, 19
   Rule 23(b)(2)...................................................................................................................5, 19, 20
   Rule 23(b)(3)..............................................................................................................5, 16, 20, 21
   Rule 23(c)(1)(B)....................................................................................................................21
   Rule 23(c)(2)............................................................................................................................7
   Rule 23(c)(2)(B)....................................................................................................................22
   Rule 23(e)................................................................................................................................9
   Rule 23(e)(1)(B)....................................................................................................................22
   Rule 23(g)..............................................................................................................................21
   Rule 23(g)(1)(A)....................................................................................................................22

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS §13:44 (5th ed.) ........................................................................10

Plaintiffs Arkansas Federal Credit Union and The Summit Federal Credit Union ("Plaintiffs"), respectfully submit this Memorandum of Law in support of their unopposed motion for an order: (1) preliminarily approving the proposed Settlement Agreement ("Settlement"); (2) approving the proposed Notice Program and Class Notice as providing the best notice that is practicable under the circumstances; (3) certifying the proposed Settlement Class; (4) appointing Plaintiffs as Class Representatives; (5) appointing Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP as Class Counsel; (6) appointing Analytics Consulting LLC as the Claims Administrator; (7) staying this Action pending Final Approval; and (8) scheduling a Final Approval Hearing.

## I.   <u>INTRODUCTION</u>

After extensive and hard-fought negotiations over the course of numerous months, Plaintiffs have reached a settlement that will provide the proposed Settlement Class[1] with monetary relief worth up to $4,000,000, plus meaningful injunctive relief, in exchange for resolving all claims against Defendants Hudson's Bay Company ULC (formerly known as Hudson's Bay Company) ("HBC"), Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), and Lord & Taylor, LLC ("Lord & Taylor") (collectively, "Hudson Bay" or "Defendants," and with Plaintiffs, the "Parties").

The proposed Settlement provides an immediate and significant recovery for the Settlement Class in the face of substantial challenges to any recovery after continued litigation, trial, and appeals.  The resulting terms are well within the range of reasonableness and were negotiated by lawyers experienced in complex litigation through exhaustive arm's-length

---

[1]   All capitalized terms used herein have the same meanings as those used in the Settlement Agreement.

1

negotiations.  Accordingly, Plaintiffs respectfully ask the Court to preliminarily approve the Settlement.

## II.   STATEMENT OF FACTS

### A.   Factual Background

For nearly a year, Hudson Bay suffered a nationwide breach of its point-of-sale systems that compromised millions of payment cards issued by Plaintiffs and the Settlement Class. Plaintiffs allege that from approximately May 1, 2017, to March 31, 2018, Hudson Bay's security practices allowed the Fin7 crime syndicate to compromise Hudson Bay's computer systems and install malware at all Saks Fifth Avenue, Saks OFF 5TH, and Lord & Taylor store locations in North America (the "Data Breach").  The malware accessed and exfiltrated payment card data belonging to Plaintiffs and the Settlement Class.  This stolen payment card data was then offered for sale and sold on the dark web by the hackers and used by cyber-criminals to make fraudulent purchases.

Plaintiffs allege that they suffered financial losses as a result of the Data Breach, including costs associated with canceling and reissuing Alerted-On Payment Cards that were identified by Visa, Mastercard, and Discover (the "Card Brands"), and costs associated with reimbursing customers for fraudulent activity made on such compromised payment cards.

Defendants deny any wrongdoing, but given the risks, uncertainties, burden, and expense of continued litigation, Defendants have agreed to this compromise settlement.

### B.   Procedural History

On May 16, 2019, Plaintiffs initiated this action on behalf of themselves and all other similarly situated financial institutions.  (ECF No. 1.)  On August 27, 2019, Plaintiffs filed a First Amended Complaint that named additional parties as defendants.  (ECF No. 51.)  Following an exchange of letters, on November 4, 2019, Hudson Bay moved to dismiss the First Amended

Complaint.  (ECF No. 59.)  By Order dated December 3, 2019, the Court granted Plaintiffs leave to file a Second Amended Complaint, which Plaintiffs filed that day.  (ECF No. 65.)

By Order dated August 2, 2019, the Court ordered Plaintiffs to coordinate discovery with plaintiffs in the related consumer action, *In re Hudson's Bay Company Data Security Incident Consumer Litigation*, 18-cv-8472 (PKC) (S.D.N.Y.) (the "Consumer Litigation").  (ECF No. 46.) By Order dated September 26, 2019, the Court stayed discovery.  (ECF No. 57.)  By Order dated March 25, 2020, the Court partially lifted the discovery stay to allow the Parties to pursue third-party discovery as to certain payment card brands in advance of and for use in connection with an agreed-upon mediation.  (ECF No. 69.)

On August 2, 2020, Defendant Lord & Taylor, LLC filed a voluntary petition for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia captioned *In re: Le Tote, Inc.*, Case No. 20-33332 (KLP).  On August 5, 2020, Defendants filed a Suggestion of Bankruptcy, resulting in an automatic stay of this action. (ECF No. 74.)  By Order dated March 26, 2021, the Court lifted the automatic stay for the limited purpose of allowing the parties to finalize their Settlement.

Beginning in March 2020, the Parties entered into settlement discussions overseen and guided by the Hon. Diane M. Welsh (Ret.).  On July 23, 2020, the Parties reported to the Court that they had reached a settlement in principle.  (ECF No. 72.)  A term sheet was executed on November 24, 2020.  Following further extensive negotiations regarding the settlement terms, the Settlement was finalized and executed on April 23, 2021.

C.      **Class Counsel's Investigation**

Prior to commencing this action, Class Counsel spent many hours investigating the claims against Hudson Bay.  (Decl., ¶10.)[2]  Class Counsel's factual and legal investigation included gathering information about Hudson Bay's security practices and information about the types of information compromised in the Data Breach as well as a review of existing legal authority regarding potential legal claims.  (*Id.*)

Though party discovery was stayed effective September 26, 2019, (ECF No. 57), the Parties engaged in informal discovery that included Hudson Bay's production of the independent payment card industry forensic investigator report (the "PFI Report") that identified, in detail, the facts and circumstances related to the Data Breach.  (Decl., ¶11.)  The PFI Report addressed the Data Breach and the Payment Card Industry Data Security Standards ("PCI-DSS") as they related to the Data Breach, as Plaintiffs alleged.  (*Id.*, ¶11.)

Class Counsel also engaged in extensive third-party discovery after the Court on March 25, 2020, lifted the discovery stay to allow for the service of third-party subpoenas.  (*Id.*, ¶12; ECF No. 69.)  Class Counsel issued subpoenas to the Card Brands – Visa, Mastercard, and Discover; Hudson Bay's acquiring bank, JPMorgan Chase; and to Le Tote, Inc., which, in 2019, purchased Lord & Taylor from HBC.  (Decl., ¶12.)

The information Class Counsel received from Hudson Bay and through third-party discovery provided Class Counsel with a clear understanding of Hudson Bay's potential liability and the strengths and weaknesses of Plaintiffs' claims.  (*Id.*, ¶13-14.)

---

[2]      Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Unopposed Motion for Preliminary Approval filed concurrently herewith ("Decl." or "Guglielmo Declaration").

D.      **Summary of the Settlement**

The Settlement is attached as Exhibit 1 to the accompanying Guglielmo Declaration.

Following is a summary of the material terms of the Settlement.

1.      **The Settlement Class**

Plaintiffs seek certification of the following Settlement Class pursuant to Fed. R. Civ. P.

23(b)(2) and (b)(3):

> All financial institutions in the United States (including its Territories and the District of Columbia) that issued Alerted-On Payment Cards in connection with the Data Security Incident at Defendants' stores from May 1, 2017 to March 31, 2018.
>
> Excluded from the Settlement Class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and financial institutions who timely and validly request exclusion from the Settlement Class.

 (Settlement, §3.1.)

2.      **Benefits to Settlement Class Members**

The Settlement provides the Settlement Class with significant monetary relief of up to

$4,000,000.  Settlement Class Members may receive:  (1) $1.85 for each Alerted-On Payment

Card (the "Fixed-Payment Claim"); and (2) up to $3,000 per Settlement Class Member as

compensation for reimbursement paid to customers for fraudulent activity on Alerted-On

Payment Cards incurred as a result of the Data Breach (a "Documented Out-of-Pocket Claim").

(*Id.*, §4.4(a).)  Hudson Bay will pay up to $3,000,000 towards Fixed Payment Claims, and up to

$1,000,000 million towards Documented Out-of-Pocket Claims.  (*Id.*)  These amounts are

consistent with other data breach cases that have been approved by courts throughout the United

States.  (Decl., ¶16.)

Additionally, the Settlement provides the Settlement Class with meaningful injunctive relief.  Among other things, Hudson Bay has agreed to hire a qualified security assessor on an annual basis to ensure compliance with PCI-DSS requirements, to conduct penetration testing of its systems, and to encrypt, tokenize, or otherwise render payment card data unreadable. (Settlement, §4.8.)  The injunctive relief contained in the Settlement is consistent with other data breach cases that have been approved by courts throughout the United States.  (Decl., ¶17.) These provisions directly address many of the root causes that led to the Data Breach in the first instance and will help further safeguard Settlement Class Member payment card data.  (*Id.*, ¶18.)

### 3. Notice to Settlement Class and Claims Process

#### a. Notice Program

The Settlement's Notice Program is designed to provide the best notice practicable to members of the Settlement Class.  (*See generally* Simmons Decl.[3]; Decl., ¶19.) As part of the Settlement, Plaintiffs ask that the Court appoint Analytics Consulting LLC ("Analytics") as the Claims Administrator.  As set forth in the accompanying Simmons Declaration, Analytics is one of the leading claims administrators with extensive experience administering class action settlements, and will ensure that the Notice Program is effectively executed.  (Simmons Decl.) The Notice Program consists of (1) Mail Notice, (2) Publication Notice, and (3) Notice on the Settlement Website.  (Settlement, §7.2.)  Both the Long-Form Notice and Summary Notice are attached to the Settlement as Exhibits B & C, respectively.  The Card Brands have and/or will provide Class Counsel with information about Settlement Class Members that will allow for effective mail notice to the Settlement Class.  (Decl., ¶19.)  Publication notice will be through the digital edition of the ABA Banking Journal and/or other publications typically read by bank and

---

[3]     Declaration of Richard W. Simmons of Analytics Consulting LLC in Support of Plaintiffs' Proposed Notice Program filed concurrently herewith ("Simmons Decl.").

credit union executives.  (Settlement, §7.2(c).)  The Notice Program will provide Settlement Class Members with a description of the material terms of the Settlement, the date by which persons in the Settlement Class may exclude themselves from, or "opt-out," of the Settlement Class, the date by which persons in the Settlement Class may object to the Settlement, and the date upon which the Final Approval Hearing will occur.  *Id.*, §7.1-7.8.)  In sum, the Notice Program is reasonably calculated to inform Settlement Class Members of the material terms of the Settlement.  (Simmons Decl., ¶¶27-31; Decl., ¶19.)  The Notice Program therefore satisfies the requirements of constitutional due process and the requirements set forth in Fed. R. Civ. P. 23(c)(2).

### c.    Claims Process

To be eligible to participate in the Settlement, Settlement Class Members will be required to submit a Claim Form stating that they are a Settlement Class Member and identifying the number of Alerted-On Payment Cards that they issued.  A copy of the Claim Form is attached to the Settlement as Exhibit A.  Settlement Class Members electing to submit Documented Out-of-Pocket Claims must additionally submit documentation that demonstrates that (1) fraudulent activity occurred on an Alerted-On Payment Card, and (2) that the Settlement Class Member making the claim reimbursed its customer as a result of the fraudulent activity.  (Settlement, §4.4(a)(ii)(2).)

To facilitate the claims process, a Claim Form with a pre-populated claim number will be mailed directly to each Settlement Class Members identified in the data provided by the Card Brands.  A Settlement Class Member may mail in its paper Claim Form, or may submit a Claim Form electronically through the Settlement Website.  (Simmons Decl., ¶¶18-19.)

Once submitted, the Settlement Administrator will be responsible for reviewing the Claim Forms.  (Settlement, Ex. D, §II.)  If a Claim Form is invalid or incomplete, the Settlement

Administrator will provide notice to the claimant and an opportunity to cure the identified defect. (*Id.*)  If the defect cannot be cured, the Settlement Administrator will reject the claim.  (*Id.*)  All Claim Forms must be submitted online or postmarked on or prior to the end of the Claim Period. (*Id.*)

### d.  Distribution Plan

The proposed claims period will run for 210 days after the Court's entry of the Preliminary Approval Order.  As set forth in the Distribution Plan, attached to the Settlement as Exhibit D, in the event that the total amount of Fixed Payment Awards exceeds $3,000,000 in the aggregate, each Settlement Class Member that is entitled to receive a Fixed Payment Award will receive a percentage of its approved Fixed Payment Award equal to $3,000,000 divided by the total number Alerted-On Payment Cards associated with approved Fixed Payment Claims. (Settlement, Ex. D, §VIII.)  In the event that the total amount of approved Documented Out-of-Pocket Awards exceeds $1,000,000 in the aggregate, each Settlement Class Member that is entitled to receive a Documented Out-of-Pocket Award will receive a percentage of its approved Documented Out-of-Pocket Award equal to $1,000,000 divided by the total number of Settlement Class Members entitled to Documented Out-of-Pocket Awards.  (*Id.*)

Within 90 days of the Effective Date, the Settlement Administrator will mail a check for the amount of any Approved Claims to each Settlement Class Member.  (Settlement, Ex. D, §VII.)  If, after paying all Approved Claims, any funds remain, the Settlement Administrator will undertake a subsequent supplemental distribution to Settlement Class Members that cashed checks sent to them as part the first distribution, if administratively feasible.  (Settlement, Ex. D, §VII(D).)  Alternatively, the Settlement Administrator may use such funds to pay any costs associated with notice and administration that exceed $50,000.  (*Id.*)  If a supplemental distribution is not possible, and the costs of notice and administration do not exceed $50,000, the

Parties will move the Court to award any remining funds to an appropriate *cy pres* recipient. (*Id.*)

4.      **Notice & Administration Costs, Service Awards, and Attorneys' Fees**

Hudson Bay has agreed to pay the reasonable costs of notice and administration, Plaintiffs' Service Awards, and attorneys' fees, in an amount not to exceed $1,100,000. (Settlement, §4.4(b).)  Class Counsel intends to seek Service Awards of $3,000 for both of the named Plaintiffs in recognition of their service to the Settlement Class.  In particular, Plaintiffs both provided substantial assistance that allowed Class Counsel to successfully prosecute and resolve this action, including by providing information and documents to Class Counsel, and actively participating in the mediation with the Hon. Diane M. Welsh (Ret.).  (Decl., ¶9.)

Class Counsel will also be responsible for paying for notice and administration costs, with any remaining funds to serve as Class Counsel's award of attorneys' fees.  (Settlement, §4.4(b).)  These funds will be paid separate and apart from the monetary relief accorded to the Settlement Class, (*id.*), and these provisions were negotiated only after reaching agreement on all other material terms of the Settlement. (Decl., ¶8.)

5.      **Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Hudson Bay from claims relating to the subject matter of the action.  The detailed release can be found in §9.1-9.7 of the Settlement.

III.    <u>**ARGUMENT**</u>

A.      **Legal Standard**

Fed. R. Civ. P. 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval.  "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials

and appeals."  4 NEWBERG ON CLASS ACTIONS §13:44 (5th ed.).  Where, as here, the proposed settlement is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *4-5 (S.D.N.Y. Nov. 8, 2006).  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has found that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).[4]  Ultimately, the general standard by which courts are guided when deciding whether to grant preliminary approval of a class action settlement is whether the proposed settlement falls within the range of what could be found "fair, reasonable and adequate," so that notice may be given to the proposed class and a date for the final approval hearing can be scheduled.  *Currency Conversion*, 2006 WL 3247396, at *5.  As demonstrated below, the Settlement satisfies the criteria for preliminary approval.

### B. The Settlement Meets the Preliminary Approval Standard

#### 1. The Settlement Is Procedurally Fair as the Product of Good Faith, Informed, Arm's-Length Negotiations

"Where a settlement is the 'product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation,' the negotiation enjoys a 'presumption of fairness.'"  *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009).

The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class litigation.  (Decl., ¶3.)  As detailed above, Class Counsel conducted

---

[4] Unless otherwise indicated, internal citations are omitted and emphasis is added.

a thorough investigation and analysis of Plaintiffs' claims and received information both from Hudson Bay and from third parties that allowed Class Counsel to evaluate the strengths and weaknesses of Plaintiffs' and the Settlement Class Members' claims and the appropriate basis upon which to settle them.  (Decl., ¶¶10-14.)  Furthermore, the settlement negotiations of the Parties were held under the supervision and with the guidance of the Hon. Diane M. Welsh (Ret.), (Decl., ¶7), which provides added assurance that the settlement negotiations were free of collusion.  *See also McBean v. City of N.Y.*, 228 F.R.D. 487, 494 (S.D.N.Y. 2005).

### 2.    The Settlement Is Substantively Fair, Reasonable, and Adequate

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement, including: (a) the complexity, expense, and likely duration of the litigation; (b) the reaction of the class; (c) the stage of the proceedings; (d) the risks of establishing liability and establishing damages; (e) the risks of maintaining the class action through trial; (f) the ability of defendants to withstand a greater judgment; (g) the range of reasonableness of the settlement fund in light of the best possible recovery; and (h) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger & Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors also are a useful guide at the preliminary approval stage and, as discussed in detail below, support preliminary approval of the Settlement.

### a.    Complexity, Expense, and Likely Duration of the Litigation

This case qualifies as complex with a Settlement Class that encompasses thousands of financial institutions throughout the United States.  Although the Parties already have devoted time and expense to litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.

Where, as here, continued litigation would subject the Parties to the "time and expense of deposition discovery, contested motions for class certification, and a likely motion for summary judgment by the Defendants," courts have not hesitated to find that discovery could "take years at great expense." *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS), 2014 WL 5819921, at *8 (E.D.N.Y. Nov. 10, 2014).  Moreover, if the litigation continued, the Parties would retain experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial, weighing strongly in favor of approval of the Settlement.  *See In re Warner Chilcott Ltd. Secs. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) (noting that a "high likelihood of significant expenditure on experts . . . weigh[] in favor of preliminary approval").

By reaching a favorable settlement at this stage of the litigation, the Parties will avoid significant expense and delay and instead, provide immediate and tangible relief to the Settlement Class.

### b.    The Reaction of the Class to the Settlement

Since no notice has been sent, consideration of this factor is premature.  *Id.*

### c.    The Stage of the Proceedings and Amount of Discovery

The Court must be satisfied that there exists "some evidentiary foundation" in support of the proposed Settlement.  *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982). Accordingly, the factor is satisfied where the parties have "engaged in sufficient investigation of the facts to enable the Court to 'intelligently make … an appraisal' of the Settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (ellipsis in original).

Here, Class Counsel conducted an in-depth factual investigation into the claims underlying the action.  (Decl., ¶¶10-14.)  Class Counsel interviewed Plaintiffs and conducted

legal research into the claims, including determining the specific claims alleged in the complaint. (*Id.*)  Class Counsel also obtained the results of an independent third-party report examining the cause of the Data Breach and informing the strength of Plaintiffs' claims as to Hudson Bay's liability.  (*Id.*)  Class Counsel engaged in serious settlement discussions, overseen by the Hon. Diane M. Welsh (Ret.), in which the merits of the case were examined by both sides in detail, ultimately resulting in the Settlement, which was designed to fairly compensate Settlement Class Members and secure meaningful injunctive relief that will further secure the Settlement Class Members' payment card data.  (Decl., ¶7.)  These factors augur in favor of approval.  *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036(HBP), 2014 WL 7495092, at *2 (S.D.N.Y. Dec. 29, 2014) (noting that although settling before depositions were taken, "[b]oth sides were sufficiently familiar with the facts to make an intelligent decision concerning the merits of the settlement").  Accordingly, the record provides sufficient information for this Court to determine that the Parties had adequate information about their claims.

### d.   The Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.  Plaintiffs have a strong case against Hudson Bay; however, winning a judgment would require surmounting several additional legal hurdles, with a recovery at the end of the day being far from certain.  Hudson Bay has argued that Plaintiffs' primary cause of action is not cognizable, an argument that, while Plaintiffs believe is unfounded, has been accepted by courts in other jurisdictions, and could stymie the Settlement Class's recovery if accepted by the Court.  In addition, there is the possibility that the Court would not certify a nationwide class.  Even if Plaintiffs were successful in having a class certified, they risk a jury finding against them as to the liability and/or damages.

Class Counsel is experienced, realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The Settlement as proposed represents a significant recovery to the Settlement Class. (Decl., ¶¶14-18.)

In addition, "[p]roving damages in this action would have been extremely complicated and would almost certainly require significant expert testimony and analysis." *Park v. The Thomson Corp.*, No. 05 Civ. 2391 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008). Although Plaintiffs believe that expert testimony would provide evidence sufficient to establish the measure of damages in this case, Plaintiffs faced the risk of a non-monetary recovery for members of the Settlement Class even if they were able to establish Hudson Bay's liability.

### e.      The Risks of Maintaining the Class Action Through Trial

The risks of maintaining this action as a class action through trial provide additional support to Plaintiffs' position that the Settlement should be approved. Hudson Bay would likely have argued that individual issues predominate over common issues. Here, even assuming that Plaintiffs were successful in certifying a class, there is a risk that Hudson Bay would ask the Court to reconsider or amend the certification decision. *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8831 (CM), 2014 WL 1224666, at *11 & n.62 (S.D.N.Y. Mar. 24, 2014).

### f.      The Ability of Defendant to Withstand a Greater Judgment

Neither Plaintiffs nor Class Counsel have direct knowledge as to this factor. It is certainly possible that Hudson Bay could withstand a greater judgment for an amount significantly greater than the Settlement. However, as a retailer during an ongoing pandemic, Hudson Bay's financial security is far from clear, and it is telling that these proceedings were stayed because Le Tote, Inc., which purchased Lord & Taylor from HBC, declared bankruptcy.

The Second Circuit, however, has held that this factor is not dispositive and need not affect the conclusion that the settlement is within the range of reasonableness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *7 (S.D.N.Y. June 27, 2012) (factor is "typically relevant only where judgment may risk bankruptcy or 'severe economic hardship'").

> **g.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

With regard to these factors, the Court looks to "see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *Ballinger*, 2014 WL 7495092, at *3 (quoting *In re Gache*, 164 F.3d 617 (2d Cir. 1988)). Determining whether a settlement is "'reasonable' . . . is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

The Settlement reached here compares favorably with settlements reached in similar data breach actions. *See, e.g.*, Memorandum of Law in Support of Financial Institution Plaintiffs' Motion for Final Approval of Class Action Settlement, *In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, (D. Minn. Apr. 11, 2016), ECF No. 745 at 4-5  ($1.50 per claimed on payment card, or up to 60% of documented fraud); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1175 (N.D. Ga. 2019) ($5.5 million allocated to pay fixed payment and documented out-of-pocket claims); Settlement Agreement and Release, *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356, (W.D. Wash. Apr. 26, 2019), ECF. No. 164-1 at 6, ¶33(a) ($2.00 per claimed on account); Final Order and Judgment, *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 343 (N.D. Ga. Sept. 22, 2017) (recovery of approximately $2.00 per affected payment card and up to 60%

of documented fraud).  Given these facts, the Court should find that the Settlement falls within the range of reasonableness.

### C.      Certification of the Settlement Class Is Appropriate

To proceed with the Settlement, the Court must certify the Settlement Class pursuant to Rule 23(a)-(b).  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Rule 23(b) requires the Court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation."  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996).  Plaintiffs must show "by a preponderance of the evidence that each of Rule 23's requirements has been met."  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  In meeting this burden, Plaintiffs do not need to have "a protracted mini-trial of substantial portions of the underlying litigation" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), but the Court must still conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  "Doubts concerning the propriety of class certification should be resolved in favor of class certification."  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. 2014) (citing *Levitt v. J.P. Morgan Secs., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013)).

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts presume numerosity such that joinder is impracticable where the class exceeds 40 members." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (Oetken, J.). Numerosity is satisfied here because the Card Brands have identified several thousand Settlement Class Members, rendering joinder impracticable.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common" to the proposed classes. Fed. R. Civ. P. 23(a)(2). For purposes of this Rule, "'[e]ven a single question'" will do. *Dukes*, 564 U.S. at 369. This "common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Commonality is satisfied even though individual circumstances differ, so long as class members' "injuries derive from a unitary course of conduct." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

Here, the commonality requirement is readily satisfied. Plaintiffs and members of the Settlement Class all bring identical claims arising from the exfiltration of payment card data from Hudson Bay's systems. The elements of Plaintiffs' principal claims – negligence and negligence *per se* – are subject to proof by common evidence. The issue of duty is a matter of law common to the Settlement Class. Whether Hudson Bay breached that duty would be established through common proof focusing on what Hudson Bay did or did not do, proof that is also common to each Settlement Class Member. Any differences in the way financial institutions responded to the Data Breach would go to the amount of their damages, not to the fact of the damage, and in the Second Circuit, the need for individualized damage calculations is

17

not an impediment to certification.  *See*, *e.g.*, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407-08 (2d Cir. 2015).

### 3.      Typicality

Rule 23(a)(3) requires that the claims of the proposed class representatives be typical of the claims of the other class members they seek to represent.   Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied when "each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Where the "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' claims are typical of the members of the Settlement Class' claims because they were all damaged by Hudson Bay's failure to secure its systems and as a result of having their payment card data exfiltrated.  *See also Cunningham v. Cornell Univ.*, 16-CV-6525 (PKC), 2019 WL 275827, at *7 (S.D.N.Y. Jan. 22, 2019) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") (Castel, J.)

### 4.      Adequacy

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement entails an inquiry into whether "'1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

As set forth above, Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of members of the Settlement Class because Plaintiffs and members of the Settlement Class have the same interest in the relief afforded by the Settlement.  Plaintiffs and members of the Settlement Class do not have divergent interests.  Plaintiffs have actively participated in all phases of the litigation, warranting their appointment as Settlement Class Representatives. (Decl., ¶9.)  Further, Plaintiffs are represented by qualified and competent counsel who has extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.  (Decl., ¶2.)  Class Counsel has devoted substantial time and resources to this action and will vigorously protect the interests of the Settlement Class.  (Decl., ¶¶3-20.)

### 5.      Injunctive Relief Under Rule 23(b)(2)

Once the prerequisites of Rule 23(a) have been met, "a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b)."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001).  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Certification pursuant to Rule 23(b)(2) is appropriate where "a single injunction . . . would provide relief to each member of the class." *Dukes*, 564 U.S. at 362; *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015) ("'[R]elief to each member of the class,' does not require that the relief to each member of the class be identical, only that it be beneficial.")

Plaintiffs readily satisfy the standards under Rule 23(b)(2) because Hudson Bay's negligence in securing its systems is a matter of general concern and the relief secured will benefit all Settlement Class Members.  The injunctive relief Plaintiffs have secured includes

Hudson Bay's agreement to hire a qualified security assessor on an annual basis to ensure compliance with PCI-DSS requirements, to conduct penetration testing of its systems, and to encrypt, tokenize, or otherwise render payment card data unreadable.   (Settlement, §4.8.) Because this relief benefits the class as a whole, certification is appropriate under Rule 23(b)(2).

### 6.   Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean*, 228 F.R.D. at 502.

Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class.

As stated above, the central issue in this litigation is whether Hudson Bay acted negligently in securing its systems.  Because Hudson Bay's negligence affected all Settlement Class Members, questions regarding the sufficiency of Hudson Bay's efforts "are about the most perfect questions for class treatment."  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *see also Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) ("[W]here plaintiffs were allegedly 'aggrieved by a single policy of the defendants,' and there is 'strong

commonality of the violation and the harm,' this 'is precisely the type of situation for which the class action device is suited.'"); *In re U.S. Foodserv. Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013).

### 6.    Superiority

The superiority requirement of Rule 23(b)(3) mandates a finding that the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As the Supreme Court has noted, the "superiority" (and predominance) requirement was added to the Federal Rules by the Advisory Committee "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem*, 521 U.S. at 615 (ellipsis in original).  This is certainly the case here.

Class adjudication of this case is superior to individual adjudication because it would be highly inefficient to require other Class Members to file separate cases to obtain the relief that Plaintiffs and Class Counsel have already secured on their behalf.

For the foregoing reasons, the Court should certify the Settlement Class and appoint Plaintiffs as the Settlement Class Representatives.

### D.    Appointment of Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must . . . appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B).  In appointing class counsel, the Court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A).

As set forth above, Class Counsel has significant experience handling class actions and in particular, the claims asserted in this Action as a result of its prosecution of similar deceptive pricing class actions throughout the Country.  (Decl., ¶2.)  Since the inception of this case, Class Counsel has demonstrated his commitment and financial ability to represent Plaintiffs and members of the Settlement Class.  (Decl., ¶¶3-20.)  Accordingly, Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP should be appointed as Class Counsel.

### E.      Adequacy of the Proposed Notice Program

"Fed. R. Civ. P. 23(e)(1)(B) provides that, in the event of a settlement of a class action, '[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement.'"  *Warner Chilcott*, 2008 WL 5110904, at *3.  "To satisfy due process, the notice must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.*  To satisfy the standards of Rule 23 and due process, the notice must describe:

>(i) the nature of the action;
>
>(ii) the definition of the class certified;
>
>(iii) the class claims, issues, or defenses;
>
>(iv) that a class member may enter an appearance through an attorney if the member so desires;
>
>(v) that the court will exclude from the class any member who requests exclusion;
>
>(vi) the time and manner for requesting exclusion; and
>
>(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice Program satisfies all of these criteria.  (*See generally* Simmons Decl.)  The Notice Plan will properly inform members of the Settlement Class of the substantive

22

terms of the Settlement.  (Simmons Decl., ¶¶22-26.)  It will advise members of the Settlement Class of their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement.  (*Id.*)  The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the requirements of constitutional due process.  (*Id.,* ¶¶22-31.)  Therefore, the Court should approve the Notice Program and the form and content of the Class Notices and Claim Form attached to the Settlement as Exhibits B & C.

### F.       The Plan of Allocation

"'To warrant approval, the plan of allocation must meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate.'"  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (ellipsis in original).  Accordingly, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Id.*

The proposed plan of allocation provides for a simple distribution of the Settlement Fund to members of the Settlement Class who submit a valid Claim Form.  Settlement Class Members will all be entitled to receive a payment of $1.85 per Alerted-On Payment Card, and reimbursement of up to $3,000 in documented out-of-pocket expenses made for reimbursing customers for fraudulent activity on Alerted-On Payment Cards.  (Settlement, §4.4(a).)  To the extent payment checks issued by the Settlement Administrator remain uncashed, the Settlement Administrator may attempt to make a supplemental distribution.  (Settlement, Ex. D, §VII(D).)  Courts have approved similar plans of distribution in data breach actions. *See, e.g.*, *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1175 (N.D. Ga. 2019).

### G.       The Court Should Stay the Action and Schedule a Final Approval Hearing

Plaintiffs respectfully request that the Court stay any further proceedings and schedule the Final Approval Hearing to be held not earlier than 135 days after the entry of the Preliminary

Approval Order.  Class Counsel respectfully ask that the Court allow Plaintiffs to file a motion for final approval of the Settlement and a motion for attorneys' fees, expenses, Service Awards, and notice and administration costs 100 days after entry of the Preliminary Approval Order.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed Settlement; (2) approve the proposed Notice Program and Class Notice as providing the best notice that is practicable under the circumstances; (3) certify the proposed Settlement Class; (4) appoint Plaintiffs as Class Representatives; (5) appoint Scott+Scott Attorneys at Law LLP as Class Counsel; (6) appoint Analytics Consulting LLC as the Claims Administrator; (7) stay this Action pending Final Approval; and (8) schedule a Final Approval Hearing.

For the Court's convenience, Plaintiffs have attached a proposed Preliminary Approval Order to the Guglielmo Declaration as Exhibit E.

DATED:  May 27, 2021

Respectfully submitted,
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/  Joseph P. Guglielmo*
Joseph P. Guglielmo
Carey Alexander
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Karen S. Halbert
Michael L. Roberts
Jana K. Law
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone:  501-821-5575
Facsimile:  501-821-4474
karenhalbert@robertslawfirm.us
mikeroberts@robertslawfirm.us
janalaw@robertslawfirm.us

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone:  412-322-9243
Facsimile:  412-231-0246
glynch@carlsonlynch.com

*Attorneys for Plaintiffs Arkansas Federal Credit Union and The Summit Federal Credit Union*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

      */s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

26