# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made as of April 23, 2021, by and between, as hereinafter defined, (a) Settlement Class Representatives on behalf of themselves and the Settlement Class, and (b) Hudson's Bay Company ULC (formerly known as Hudson's Bay Company) ("HBC"), Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), and Lord & Taylor, LLC ("Lord & Taylor") (collectively, "Hudson's Bay" or "Defendants"), and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Hudson's Bay enter into this Agreement by and through their respective counsel. By this Agreement, Hudson's Bay and Settlement Class Representatives seek to and do hereby resolve all claims of the Settlement Class Representatives and the Settlement Class (as defined in this Agreement) that could have been or were asserted in the action titled *Arkansas Federal Credit Union and Summit Federal Credit Union v. Hudson's Bay Company, et al.*, No. 19-cv-4492 (PKC) (S.D.N.Y.) (the "Litigation"). Settlement Class Representatives and Hudson's Bay are collectively referred to herein as the "Parties."

## Recitals

1.1.   In a series of announcements beginning in April 2018, Hudson's Bay announced that it had been the victim of a criminal cyberattack on its computer systems in which the attackers gained unauthorized access to the payment card data associated with several million payment cards.

1.2.   On May 16, 2019, the Financial Institution Plaintiffs filed a class action lawsuit against Hudson's Bay seeking damages and other relief and alleging that financial institutions had been injured as a result of the announced attack.

1.3.   By Order dated August 2, 2019, the Court ordered the Financial Institution Plaintiffs to coordinate discovery with plaintiffs in the related consumer action, *In re Hudson's Bay Company Data Security Incident Consumer Litigation*, 18-cv-8472 (PKC) (S.D.N.Y.) (the "Consumer Litigation").

1.4.   On August 27, 2019, the Financial Institution Plaintiffs filed a First Amended Complaint. Following an exchange of letters, on November 4, 2019, Hudson's Bay moved to dismiss the First Amended Complaint. By Order dated December 3, 2019, the Court granted the Financial Institution Plaintiffs leave to file a Second Amended Complaint (the "Complaint"), which the Financial Institution Plaintiffs filed that day.

1.5.   By Order dated September 26, 2019, the Court stayed discovery. By Order dated March 25, 2020, the Court partially lifted the discovery stay to allow the Parties to pursue third-party discovery as to certain payment card brands in advance of and for use in connection with an agreed-upon mediation.

1.6.   As result of the Order partially lifting the stay of discovery, the Parties were able to engage in third-party discovery and informally agreed to exchange certain party discovery necessary to understand the parties' respective positions as to liability and damages.  As part of coordinating discovery with the Consumer Litigation, Hudson's Bay produced to the Financial Institution Plaintiffs all documents that were produced in response to the document requests served on Hudson's Bay in the Consumer Litigation, which Plaintiffs reviewed. The Financial Institution Plaintiffs likewise produced certain information relating to their claims.  Additionally, the Financial Institution Plaintiffs obtained and reviewed documents from third-party payment card brands.

1.7.   This Settlement resulted from good faith, arm's-length settlement negotiations, including a full-day mediation before the Hon. Diane M. Welsh (Ret.) of JAMS and multiple follow up settlement conferences among the Parties and with Judge Welsh. The Parties did not discuss attorneys' fees, costs, and expenses prior to agreeing to the essential terms of the Settlement.

1.8.   Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in the Settlement and how best to serve the interests of the Settlement Class.  Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty, and cost of further prosecution of the Litigation, and the substantial benefits to be received by the Settlement Class pursuant to this Settlement, that a settlement with Hudson's Bay on the terms set forth in this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

1.9.   Hudson's Bay denies any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Hudson's Bay with respect to any claim of fault or liability or wrongdoing or damages whatsoever, any infirmity in the defenses that Hudson's Bay asserted or would assert, or to Financial Institution Plaintiffs' ability to satisfy the requirements of the Federal Rule of Civil Procedure Rule 23.  Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Hudson's Bay has agreed to settle the Litigation on the terms as set forth in this Settlement, subject to Court approval.

1.10.   The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims (as defined below) of the Settlement Class. The Parties intend this Agreement to bind Settlement Class Representatives, Hudson's Bay, and all Settlement Class Members that do not timely and validly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice, subject to preliminary and final Court approval, as required by Rule 23, on the following terms and conditions:

### Definitions

2.1.  "Alerted-On Payment Card" means any payment card (including debit or credit cards) identified in the card brand notices issued in connection with the Data Security Incident that is the subject of the Financial Institution Plaintiffs' Complaint, including but not limited to: MasterCard: ADC004939-US-18, ADC004939-US-18-1, ADC004939-US-18-2, ADC004939-US-18-3, ADC004939-US-18-4, and ADC004939-US-18-5; Visa: US-2018-0169a-PA, US-2018-0169b-PA, US-2018-0169c-PA, US- 2018-0169d-PA, US-2018-0169e-PA, US-2018-0169f-PA, US-2018-0169g-PA, US-2018-0169h- PA, US-2018-0169i-PA, US-2018-0169j-PA, US-2018-0169k-IC, US-2018-0169l-IC, US-2018-0169m-IC, and US-2018-0169n-IC; and any Alerted-On Payment Cards issued by financial institutions identified by Discover in the Litigation.[1]

2.2. "Approved Claim" means a claim for Settlement benefits made using a Claim Form by a Settlement Class Member found to be valid and in an amount approved by the Settlement Administrator, using industry standard methods to detect fraud and eliminate duplicate claims.

2.3.  "Claims Administration" means the processing of Claim Forms received from Settlement Class Members and payment of Approved Claims by the Settlement Administrator, as well as any other duties and obligations of the Settlement Administrator, as set forth in the Settlement.

2.4.  "Claims Deadline" means the deadline by which Settlement Class Members must submit a claim for benefits under this Settlement, which shall be 180 days after the Notice Deadline.

2.5.  "Claim Form" shall mean the claim form attached as Exhibit A (including an electronic version thereof), or a claim form approved by the Court that is substantially similar to Exhibit A, that a Settlement Class Member must complete and submit in order to be eligible for benefits under the Settlement.

2.6.  "Class Counsel" means:

Joseph P. Guglielmo
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Avenue, 17th Floor
New York, NY 10169

---

[1]   The Parties intend to supplement this definition to conform to the complete alert series for the Alerted-On Payment Cards Mastercard, Visa, and Discover issued relating to the Data Security Incident.  Plaintiffs have requested such information directly from the payment card brands, which have agreed to provide this information following entry of the Preliminary Approval Order.

2.7.   "Complaint" means the Second Amended Class Action Complaint that the Financial Institution Plaintiffs filed in the Litigation on December 3, 2019.  (ECF No. 65.)

2.8.   "Costs of Settlement Administration" means all reasonable actual costs and expenses of the Settlement Administrator associated with or arising from the Claims Administration, the Notice Program, and providing notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b). The Costs of Settlement Administration shall be paid to the Settlement Administrator as set forth in this Settlement.

2.9.   "Court" means the United States District Court for the Southern District of New York.

2.10.   "Data Security Incident" means the data security incident announced by Hudson's Bay beginning on or about April 1, 2018.

2.11.   "Defendants' Released Persons" means: (a) Hudson's Bay; (b) each of its or their respective current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct; and (c) the respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, reinsurers, shareholders, members, advisors, consultants, representatives, partners, joint venturers, and assigns of each of the entities and persons listed in sections (a) and (b) of this Paragraph.

2.12.   "Effective Date" means the first business day after which all of the following events have occurred:  (a) Class Counsel and Hudson's Bay's counsel have executed this Settlement; (b) following notice to the Settlement Class, the Court has entered the Final Approval Order and Judgment without material change to either the Parties' Settlement or agreed-upon proposed Final Approval Order and Judgment, as described in this Settlement and attached hereto as Exhibit F; and (c)(i) the time for seeking rehearing, appellate, or other review of the Final Approval Order and Judgment has expired with no appeal, motion for rehearing, or motion for further review being filed, except as specifically described further in this definition; or (ii) the Final Approval Order and Judgment is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be altered, precluded, or delayed in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses or Service Awards in the amounts that Class Counsel requests but otherwise enters a Final Order and Judgment without material change to the remainder of the Settlement or the agreed-upon proposed Final Order and Judgment.  Further, the Effective Date shall not be altered, precluded, or delayed in the event that an appeal is filed, with the sole issues on appeal being the award of attorneys' fees, costs, and/or expenses to Class Counsel and/or Service Award.

2.13.   "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described in the Settlement.  The Parties agree that the Escrow Account is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. The Parties agree that the Escrow Account shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the Escrow Account as a qualified settlement fund from the earliest date possible.

2.14.   "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Award.  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the latest of such orders.

2.15.   "Final Approval Order and Judgment" means the order and judgment that the Court enters upon Final Approval and in the form of, or materially in the form of, the proposed Final Approval Order and Judgment attached hereto as Exhibit F.  In the event that the Court issues separate orders addressing the matters constituting Final Approval, then the Final Approval Order and Judgment includes all such orders.

2.16.   "Financial Institution Plaintiffs" means Arkansas Federal Credit Union and The Summit Federal Credit Union.

2.17.   "Hudson's Bay" means Hudson's Bay Company ULC (formerly known as Hudson's Bay Company) ("HBC"), Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), and Lord & Taylor, LLC ("Lord & Taylor").

2.18.   "Litigation" means the action styled *Arkansas Federal Credit Union and Summit Federal Credit Union v. Hudson's Bay Company, et al.*, No. 19-cv-4492 (PKC) (S.D.N.Y.) in the Southern District of New York.

2.19.   "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

2.20.   "Notice Deadline" means the date by which the Settlement Administrator is required to send out Mail Notice, which shall be 30 days after entry of the Preliminary Approval Order unless a different deadline is set by the Court.

2.21.   "Notice Program" means the notice plan and methods provided for in this Settlement and consists of: (a) a direct mail notice to Settlement Class Members ("Mail Notice"); (b) publication notice  (as described in more detail below); (c) notice posted on the Settlement Website; and (d) such other notice as is required by due process and Rule 23.  The Notice Program shall be effected in substantially the manner provided for in this Settlement.

2.22.   "Objection Deadline" means 114 days after entry of the Preliminary Approval Order.

2.23.   "Opt-Out Deadline" means 114 days after entry of the Preliminary Approval Order.

2.24.   "Parties" means Hudson's Bay and the Financial Institution Plaintiffs, individually and on behalf of the Settlement Class.

2.25.   "Plaintiffs' Released Persons" means the Settlement Class, their current and former parents, subsidiaries, affiliated companies, predecessors, successors, officers, directors, agents, predecessors, assigns, assignees, partnerships, partners, insurers, reinsurers and divisions and the Settlement Class Representative's counsel of record in the Litigation.

2.26.   "Preliminary Approval Order" means the order preliminarily approving the Settlement and, among other things, ordering that notice be provided to the Settlement Class, and in the form of, or materially in the form of, the proposed Preliminary Approval Order attached hereto as Exhibit E.

2.27.   "Releasing Parties" means the Settlement Class Representatives and all Settlement Class Members who do not timely and validly exclude themselves from the Settlement, and each of these entities' current and former parents, subsidiaries, affiliated companies, predecessors and divisions, as well as their respective heirs, assigns, beneficiaries, predecessors, officers, directors, agents, partnerships, partners, insurers, reinsurers and successors.

2.28.   "Service Award" means a payment of up to $3,000 to each Financial Institution Plaintiff (two total); subject to Court approval, in compensation for its involvement in this Litigation and service on behalf of other financial institutions.

2.29.   "Settlement Agreement" or "Settlement" means this settlement agreement and release, including exhibits hereto.

2.30.    "Settlement Administrator" means the entity to be selected by the Parties, and approved by the Court to effectuate the Notice Program and Claims Administration per the terms of this Settlement.

2.31.   "Settlement Class Members" or "Settlement Class" means all financial institutions in the United States (including its Territories and the District of Columbia) that issued Alerted-On Payment Cards.

2.32.   "Settlement Class Representatives" means the Financial Institution Plaintiffs.

2.33.   "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but no later than the Notice Deadline, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to the Settlement, Notice, Preliminary Approval Order, Claim Form, Complaint, and such other documents as Class Counsel and Hudson's Bay's counsel agree to post, or that the Court orders posted, on the website.  These documents shall remain on the Settlement Website at least 60 days after the Effective Date.  The URL of the Settlement Website shall be agreed upon by Class Counsel and Hudson's Bay's counsel.  Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website.  The Settlement Website shall not include any advertising and shall remain operational until at least 60 days after the Effective Date.

### Settlement Class

3.1.   For settlement purposes only, Class Counsel shall seek, and Hudson's Bay shall not oppose, the certification of the following class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), defined as:

> **All financial institutions in the United States (including its Territories and the District of Columbia) that issued Alerted-On Payment Cards in connection with the Data Security Incident at Defendants' stores from May 1, 2017 to March 31, 2018.**

Excluded from the Settlement Class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and financial institutions who timely and validly request exclusion from the Settlement Class.

3.2.   For settlement purposes only, Class Counsel shall seek, and Hudson's Bay shall not oppose, the appointment of Class Counsel as settlement class counsel and the appointment of Settlement Class Representatives as defined above.  Settlement Class Representatives will move for provisional certification of the Settlement Class, for settlement purposes only, contemporaneously with their motion for preliminary approval of the Settlement. Hudson's Bay agrees not to contest provisional certification of the Settlement Class for settlement purposes only.

3.3.   Within thirty (30) days after preliminary approval, or as soon as practicable, Class Counsel shall provide, or cause to be provided, to the Settlement Administrator and Hudson's Bay with a class list reflecting: (1) the available contact information (*i.e.*, name and mailing or email address) of each financial institution falling under the Settlement Class definition; and (2) the number of Alerted-On Payment Cards issued by each such financial institution (the "Class List").

### Settlement Consideration

4.1.   In exchange for the mutual promises and covenants in this Agreement; including, without limitation, the Releases set forth below and the dismissal of the Action upon the Effective Date, Hudson's Bay agrees to pay and provide the settlement consideration described in this Section 4 as restitution (the "Settlement Consideration").

4.2.   In no event shall Hudson's Bay be required to pay or provide more than the Settlement Consideration in connection with this Settlement.

4.3.   After the Effective Date, Hudson's Bay will make up to a maximum aggregate amount of $4,000,000 available to the Settlement Class Members who submit approved Fixed Payment Claims and/or Documented Out-of-Pocket Claims, as defined below (together, "Approved Claims"). Fixed Payment Claims shall be paid up to a maximum aggregate amount of $3,000,000, subject to a pro-rata reduction, if necessary, as set forth in the Claims Administration and Distribution Plan.  Documented Out-of-Pocket Claims shall be paid up to a maximum aggregate amount of $1,000,000, subject to a pro-rata reduction, if necessary, as set forth in the Claims Administration and Distribution Plan.  Eligible Settlement Class Members may make both Documented Out-of-Pocket Claims and Fixed Payment Claims so long as such claims are not encompassed by one another.

4.4.   Hudson's Bay shall fund the following payments of the Settlement Consideration, as set forth below:

   a.   Payment of Approved Claims to the Settlement Class.

      i.   Payments to the Settlement Class shall be administered on a "claims made" basis in accordance with the Claims Administration and Distribution Plan (attached hereto as Exhibit D).  This means that Hudson's Bay will provide sufficient funds to pay only those Approved Claims submitted by Settlement Class Members in accordance with the Claims Administration and Distribution Plan.  Hudson's Bay will not be required to establish a settlement fund.  Instead, within 30 days, or as soon thereafter as is reasonably practicable after the Effective Date, or, if after the Effective Date, the Claims Deadline, the Settlement Administrator shall create the

Escrow Account, calculate the dollar amount of all Approved Claims, and inform Hudson's Bay of that amount. Within 30 days of receiving notification from the Settlement Administrator of the dollar amount of Approved Claims, Hudson's Bay shall transfer funds to the Escrow Account to pay Approved Claims. These funds will be used solely for payment of Approved Claims and shall not exceed an amount equal to the aggregate amount of Approved Claims or $4,000,000, whichever is less. The funds placed in this Escrow Account shall be deemed a "qualified Settlement fund" within the meaning of United States Treasury Reg. §1.468B-l. Hudson's Bay will fully satisfy its obligation to fund this account upon depositing the appropriate amount as directed by the Settlement Administrator, and all risk of loss thereafter passes to Financial Institution Plaintiffs and the Settlement Class.

ii. Payment to the Settlement Class will consist of the following, subject to proration if necessary:

1. *Fixed Payment Claims.* Settlement Class Members who submit valid claims will receive $1.85 for each Alerted-On Payment Card they identify in their Claim Form, subject to reduction on a pro rata basis as set forth herein and in the Claims Administration and Distribution Plan (attached hereto as Exhibit D) (the "Fixed Payment Claims").

2. *Documented Out-of-Pocket Claims.*

   (a) Hudson's Bay will provide monetary consideration to be paid to Settlement Class Members who submit valid documented claims for reimbursement of unreimbursed out-of-pocket expenses consisting of fraud reimbursement amounts paid to customers for fraudulent activity on Alerted-On Payment Cards incurred as a result of, and specifically associated with, the Data Security Incident, subject to reduction on a pro rata basis as set forth herein and in as set forth in and subject to the Claims Administration and Distribution Plan (attached hereto as Exhibit D) (collectively, "Documented Out-of-Pocket Claims").

   (b) Eligible Settlement Class Members will be entitled to receive up to $3,000.00 per Settlement Class Member for valid Documented Out-of-Pocket Claim(s) in the aggregate, subject to a pro-rata reduction as set forth herein and in the

Claims Administration and Distribution Plan (attached hereto as Exhibit D).

b. <u>Payment of Costs Associated with Administration of Settlement, Service Awards, Attorneys' Fees, and Expenses of Litigation.</u> Hudson's Bay agrees to pay the reasonable costs of attorneys' fees and expenses, Financial Institution Plaintiffs' Service Awards, and Notice and Administration Costs of the Settlement, as may be approved by the Court, in an amount not to exceed $1,100,000. These costs will be paid directly by Hudson's Bay as follows:

   i. *Service Awards.* Hudson's Bay will pay Court-approved Service Awards to each of the Financial Institution Plaintiffs, in an amount not to exceed $3,000 per Financial Institution Plaintiff. Hudson's Bay shall fund such payment directly to the Financial Institution Plaintiffs, care of Class Counsel, by wire transfer to Class Counsel's escrow account, within 30 days of the Effective Date. Class Counsel shall have sole responsibility for ensuring that the Service Awards are distributed the Financial Institution Plaintiffs following the wire transfer to Class Counsel's escrow account and Hudson's Bay shall have no further liability with respect to the Service Awards. Neither Class Counsel's application for, nor any financial institution's entitlement to, a Service Award shall be conditioned in any way upon such financial institution's support for this Settlement. The Service Awards shall be severable and separate, such that the Court's failure to approve any or all of the amount of the Service Awards shall not invalidate or otherwise affect the settlement.

   ii. *Attorneys' Fees, Expenses of Litigation, and Notice and Administration Expenses.* Hudson's Bay will pay Court-approved Class Counsel attorneys' fees, expenses, and notice and administration costs in an amount not to exceed $1,100,000, inclusive of the Service Awards referenced in Section 4.4(b)(i). Hudson's Bay shall make an initial payment of $50,000.00 for notice and administration costs to Class Counsel, by wire transfer, which shall be credited against any further award of attorneys' fees, expenses, and notice and administration costs, within 7 days of the Court's entry of the Preliminary Approval Order. Hudson's Bay shall make any further payments associated with an award of attorneys' fees, expenses, and notice and administration costs to Class Counsel as approved by the Court, by wire transfer, within 30 days of the Effective Date or within 30 days of the approval of such amounts by the Court, whichever is later.

4.5. Hudson's Bay shall be under no obligation to fund any other, additional, or greater amount than the Settlement Consideration amounts reflected in Section 4. Hudson's Bay shall be

under no obligation to pay any other, additional, or greater amount than $1,100,000 in attorneys' fees, expenses, Service Awards, and notice and administration costs in connection with this Settlement and may withdraw from the Settlement if an award is made in a greater amount. Class Counsel will not seek attorneys' fees, expenses, Service Awards, and notice and administration costs other than as provided for in Section 4.4(b). The finality, effectiveness, fairness, or approval of the Settlement Agreement shall not depend upon the Court awarding any particular amount of attorneys' fees, expenses, Service Awards, or notice and administration costs.

4.6.    The funds in the Escrow Account, if any, shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. §1.468B-l, at all times, from the creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed upon Hudson's Bay, Financial Institution Plaintiffs, and/or Class Counsel, with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively, "Taxes"), shall be paid out of the Escrow Account. The Escrow Account shall indemnify and hold Hudson's Bay, Financial Institution Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification) and Hudson's Bay, Financial Institution Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes.

4.7.    The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Financial Institution Plaintiff or any Settlement Class Member of any payment or transfer made pursuant to this Agreement. Each Financial Institution Plaintiff and Settlement Class Member shall be solely responsible for the federal, state and local tax consequences to it of the receipt of any funds pursuant to this Agreement.

4.8.    <u>Injunctive Relief.</u> In further consideration for the releases described herein, the brands and stores that Hudson's Bay Company ULC or its parent companies still own or operate in the United states agree to adopt and/or maintain the following measures:

    a.    Hiring a qualified security assessor on an annual basis to assess compliance with PCI-DSS requirements and achieving a Report on Compliance that evidences compliance with all such requirements;

    b.    Conducting annual PCI penetration testing in compliance with PCI-DSS Section 11.3, and remediating all critical vulnerabilities where feasibly possible;

    c.    Operating a system that is designed to encrypt, tokenize or otherwise render unreadable in a manner recognized by PCI-DSS rules payment card information at the point of sale terminals in stores;

    d.    Maintaining written information security programs, policies and procedures; and

       e.      Written confirmation from Hudson's Bay that the items in PFI report 6.1 were completed and have not been reversed or undone (except that different technologies, vendors or solution may be used to achieve the same result).

4.9.    Other than as specifically set forth above, Hudson's Bay obligations under Section 4.8 shall commence on the Effective Date of the Settlement Agreement and shall terminate three years thereafter.  The measures set forth above will be materially maintained during this three-year period of time, subject to any of the following: (a) a determination by Hudson's Bay that the measure is no longer in the best interest of Hudson's Bay, including, but not limited to, due to circumstances making the measure no longer applicable, feasible, or available on commercially reasonable terms; or (b) modifications which Hudson's Bay reasonably believes are required by applicable law, regulation, or PCI-DSS rule or requirement.

## Preliminary Approval

5.1.    Upon execution of this Settlement, Class Counsel shall promptly move the Court for an order granting the Preliminary Approval Order, substantially in the form attached hereto as Exhibit E.  The motion for preliminary approval shall request that the Court: (a) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (b) provisionally certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) and (e) for settlement purposes only; (c) approve the Settlement Administrator and Notice Program set forth herein, form and content of the Notice, and Claim Form as meeting the standard of "best notice practicable" under Fed. R. Civ. P. 23(c)(2)(B); (d) approve the procedures set forth in this Settlement for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (e) stay all proceedings in the Litigation unrelated to the Settlement pending Final Approval of the Settlement; (f) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning any Released Claims; (g) appoint Class Counsel and Settlement Class Representatives; and (h) schedule a Final Approval hearing at a date that provides sufficient time for the deadlines contemplated by this Settlement and that is convenient for the Court, at which time the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses and Service Awards (the "Final Approval Hearing").

5.2.    Within 10 days of the filing of the motion for preliminary approval, Hudson's Bay shall serve, or cause to be served, at its own cost, a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under CAFA.

## Settlement Administrator

6.1.    The Settlement Administrator shall administer various aspects of the Settlement and perform such other functions as are specified for the Settlement Administrator elsewhere in this Settlement and the Claims Administration and Distribution Plan, including, but not limited to, overseeing administration of the Escrow Account; providing Notice to Settlement Class Members, as described in this Settlement; effecting Publication Notice; establishing and operating the Settlement Website and a toll-free number; administering the claims process; and distributing cash payments according to the processes and criteria established by this Settlement and the Claims Administration and Distribution Plan.

6.2.    The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Settlement, include:

  a.  implementing the Notice Program required by this Settlement;

  b.  establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

  c.  establishing and maintaining the Settlement Website;

  d.  establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement Agreement-related inquiries;

  e.  responding to Settlement Class Member inquiries;

  f.  processing all written notifications of exclusion from the Settlement Class and providing deficiency notices as set forth herein and in the Claims Administration and Distribution Plan;

  g.  providing weekly reports and, no later than 10 days after the Opt-Out Deadline, a final report to Class Counsel and Hudson's Bay that summarizes the number of written requests for exclusion received that week, total number of written requests for exclusion received to date, and other pertinent information as requested by Class Counsel and Hudson's Bay's counsel;

  h.  in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and validly provided a written request for exclusion from the Settlement Class;

  i.  reviewing, determining the validity of (using industry standard methods to detect fraud and eliminate duplicate claims), responding to, and processing all claims submitted by Settlement Class Members, pursuant to criteria established by this

Settlement Agreement and as set forth in the Claims Administration and Distribution Plan;

j.  Making available to the Parties for inspection and review the Claim Forms and any supporting documentation received by Settlement Class Members at any time upon reasonable notice;

k.  after the Effective Date, processing and transmitting payments to Settlement Class Members that submitted Approved Claims;

l.  providing weekly reports and a final report to Class Counsel and Hudson's Bay's counsel that summarize the number of claims since the prior reporting period, total number of claims received to date, number of any claims approved and denied since the prior reporting period, total number of claims approved and denied to date, and other pertinent information as requested by Class Counsel and Hudson's Bay's counsel; and,

m.  performing any function related to Claims Administration at the agreed-upon instruction of the Parties, including, but not limited to, verifying that payments associated with Approved Claims have been distributed in accordance with this Settlement.

6.3.  Class Counsel shall provide the Settlement Administrator with sufficient information about Settlement Class Members to permit the Settlement Administrator to process and validate claims, including, at a minimum, the names and mailing addresses of all Settlement Class Members and the number of Alerted-On Payment Cards issued by each Settlement Class Member.

6.4.  The Parties, Class Counsel, and Hudson's Bay's counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Escrow Account; (iii) the formulation, design or terms of the disbursement of the Escrow Account; (iv) the determination, administration, calculation or payment of any claims under this Agreement; (v) any losses suffered by or fluctuations in the value of the Escrow Account; or (vi) the payment or withholding of any Taxes, expenses or costs incurred in connection with the taxation of the Escrow Account or the filing of any returns.

6.5.  The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Hudson's Bay's counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in

connection with the administration of the Settlement; (ii) the management, investment or distribution of the Escrow Account; (iii) the formulation, design or terms of the disbursement of the Escrow Account; (iv) the determination, administration, calculation or payment of any claims asserted under this Agreement; (v) any losses suffered by, or fluctuations in the value of the Escrow Account; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Escrow Account or the filing of any returns.

## Notice, Opt-Outs, and Objections

7.1.   Upon entry of the Preliminary Approval Order of the Settlement, at the direction of Class Counsel, the Settlement Administrator will begin implementing the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may opt-out or object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Settlement and other related documents and information.

7.2.   The Notice Program includes: (1) Mail Notice; (2) Publication Notice, and (3) Notice on the Settlement Website.  The Notice Program is to be implemented as follows:

   a.   Within thirty (30) days after preliminary approval, or as soon as practicable, Class Counsel shall provide, or cause to be provided, the Settlement Administrator with the Class List;

   b.   Mail Notice will be sent to those on the Class List by the Notice Deadline.  The Mail Notice shall consist of the long-form notice, in the form attached hereto as Exhibit B, and Claim Form, in the form attached hereto as Exhibit A.  For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated.  For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified.  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable;

   c.   The Settlement Administrator will cause to be published in the digital edition of the ABA Banking Journal and/or other publications typically read by bank and credit union executives the summary notice attached hereto as Exhibit C.  The publications in which the notice will appear and the dates and frequency of the

publication notice will be determined by the Settlement Administrator in consultation with the Parties.

d. By the Notice Deadline, the Settlement Administrator will create and maintain the Settlement Website, which will contain the information and documents required by this Settlement. The Settlement Website will be configured so that Settlement Class Members may file claims electronically; and,

7.3. The Notice shall include a procedure for Settlement Class Members to opt-out and exclude themselves from the Settlement by notifying, in writing, the Settlement Administrator, Class Counsel, and Hudson's Bay's counsel of their intent to exclude themselves from the Settlement. The notice shall be sent via first class postage prepaid U.S. mail to the addresses provided in the Notice. Such written requests for exclusion must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written request for exclusion must include the name of this Litigation (*Arkansas Federal Credit Union and Summit Federal Credit Union v. Hudson's Bay Company, et al.*, No. 19-cv-4492 (PKC) (SDNY)) the full name, address, and telephone number of the Settlement Class Member; the name, address, email address, telephone number, position, and signature of the individual who is acting on behalf of the Settlement Class Member; and the words "Request for Exclusion" at the top of the document or a statement in the body of the document requesting exclusion from the Settlement. The Settlement Administrator shall provide the Parties with copies of all opt-out requests on a weekly basis and a final list of all who have timely and validly excluded themselves from the Settlement, which Class Counsel may move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing. Any Settlement Class Member who does not provide a timely request for exclusion, or who does not provide all information required by this Settlement to exclude itself, shall be bound by the terms of the Settlement, including all releases in the Settlement.

7.4. In the event that a Settlement Class Member purports to provide notice of its intention to opt out of the Settlement but fails to provide all of the information set forth above, including specifically the identification of the number of Alerted-On Payment Cards issued by the Settlement Class Member, the Settlement Administrator shall, within 5 days of receiving the deficient notice, send the Settlement Class Member a deficiency notice. The deficiency notice shall inform the Settlement Class Member that its attempt to opt out is deficient, invalid, and without legal effect. The deficiency notice shall be sent by the Settlement Administrator via email and, if email is not feasible, then by a USPS Priority Express mail. The deficiency notice shall also inform the Settlement Class Member that it must re-submit a valid notice requesting exclusion that includes all of the required information, including but not limited to the number of Alerted-On Payment Cards identified as at risk to an email address to be provided by the Claims Administrator, no later than 10 days from the date of the deficiency notice in order for its opt out to be effective. If the Settlement Class Member

fails to provide all of the required information on or before that deadline, then its attempt to opt out shall be invalid and have no legal effect, and the Settlement Class Member shall be bound by the Settlement, including the releases.

7.5.    The Notice shall also include a procedure for Settlement Class Members to object to the Settlement, Class Counsel's request for attorneys' fees, expenses, Service Awards, and/or notice and administration costs.  Objections to the Settlement, Class Counsel's request for attorneys' fees, expenses, Service Awards, and/or notice and administration costs must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Hudson's Bay's counsel.  For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Hudson's Bay's counsel at the addresses listed in the Notice and postmarked by no later than the Objection Deadline, as specified in the Notice.  For an objection to be considered by the Court, the objection must also set forth:

a.      the name of the Litigation: *Arkansas Federal Credit Union and Summit Federal Credit Union v. Hudson's Bay Company, et al.*, No. 19-cv-4492 (PKC) (SDNY);

b.      the full name of the objecting Settlement Class Member and the full name, address, email address, and telephone number of the person acting on its behalf;

c.      an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.      whether the objection applies only to the objecting Settlement Class Member, a specific subset of the Settlement Class, or the entire Settlement Class;

e.      all grounds for the objection stated, with specificity, accompanied by any legal support for the objection;

f.      the identity of all counsel who represent the objecting Settlement Class Member, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement, Class Counsel's request for attorneys' fees, expenses, Service Awards, and/or notice and administration costs;

g.      the identity of all representatives (including counsel representing the objecting Settlement Class Member) who will appear at the Final Approval Hearing;

h.      the number of times in which the objecting Settlement Class Member has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such

objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

i.  the number of times in which the objecting Settlement Class Member's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector filed the objection, the caption of each case in which the counsel or the firm has made such an objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

j.  if the objecting Settlement Class Member is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include: (i) a description of the attorney's legal background and prior experience in connection with class action litigation; (ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate;

k.  any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

l.  a description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;

m.  a statement indicating whether the objecting Settlement Class Member intends to personally appear and/or testify at the Final Approval Hearing; and

n.  the objecting Settlement Class Member (or the objecting Settlement Class Member's attorney's) signature on the written objection.

7.6.  In addition, any Settlement Class Member that objects to the proposed Settlement must make itself available to be deposed regarding the grounds for its objection and must provide, along with its objection, the dates when the objector will be available to be deposed during the period from when the objection is filed through the date 7 days before the Final Approval Hearing.

7.7.    Any Settlement Class Member who both objects to the Settlement Agreement and opts-out will be deemed to have opted-out and the objection shall be deemed null and void.

7.8.    The Mail Notice shall be sent or issued by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable and any reminder mail notices to be sent during the claims period

7.9.    At least 35 days before the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Hudson's Bay with one or more affidavits confirming that the Notice Program was completed in accordance with the Parties' instructions and the Court's approval.  Class Counsel shall file such affidavit(s) with the Court as an exhibit to, or in conjunction with, Settlement Class Representatives' motion for Final Approval of the Settlement.

7.10.   In the event that Effective Date does not occur, the Settlement Administrator will take reasonable steps to ensure that no further Costs of Settlement Administration are incurred without the express written approval of the Parties.

## Final Approval Order and Judgment

8.1.    Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur, which shall be sufficiently far in advance to allow for the deadlines contemplated by this Settlement.  The Final Approval Hearing shall be scheduled no earlier than 135 days after the entry of the Preliminary Approval Order.    By no later than 100 days after the entry of the Preliminary Approval Order, Class Counsel shall file a motion for final approval of the Settlement and a motion attorneys' fees, expenses, Service Awards, and notice and administration costs. Objectors, if any, shall file any response to Class Counsel's motions no later than 114 days after the entry of the Preliminary Approval Order. By no later than 128 days after the entry of the Preliminary Approval Order, responses shall be filed, if any, to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's request for attorneys' fees, expenses, Service Awards, and/or notice and administration costs shall be filed. At the Final Approval Hearing, the Court will consider the motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, expenses, Service Awards, and notice and administration costs. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel), who object to the Settlement and/or Class Counsel's request for attorneys' fees, expenses, Service Awards, and/or notice and administration costs, provided the objectors filed timely objections that meet all of the requirements listed in this Settlement.

8.2.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and Judgment granting Final Approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, expenses, Service Awards, and notice and administration costs.  The proposed Final Approval Order and Judgment that will be filed with the Final Approval Motion shall be in a form agreed upon by Class Counsel and Hudson's Bay as set forth in Exhibit F attached hereto.  Such proposed Final Approval Order and Judgment shall, among other things:

a.    determine that the Settlement is fair, adequate, and reasonable;

b.    finally certify the Settlement Class for settlement purposes only;

c.    determine that the Notice provided satisfied Rule 23 and due process requirements;

d.    dismiss all claims in the Complaint and Litigation with prejudice;

e.    bar and enjoin the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment;

f.    release and forever discharge Hudson's Bay and Defendants' Released Persons from the Released Claims and release Plaintiffs' Released Persons, as provided in this Settlement Agreement; and

g.    reserve the Court's continuing and exclusive jurisdiction over Hudson's Bay and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Settlement in accordance with its terms.

## Releases

9.1.    As of the Effective Date, the Releasing Parties, each on behalf of themselves and any predecessors, successors, or assigns, shall automatically be deemed to have fully, completely, finally, irrevocably, and forever released and discharged Defendants' Released Persons of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown (including Unknown Claims), existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, administrative, statutory, or equitable, that are, were or could have been asserted in the Litigation or the Complaint, including, but not limited to, claims that result from, arise out of, are based upon, or relate to the Data Security Incident, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (a) Hudson's Bay's information security policies and practices; (b) the allegations, facts, and/or circumstances described in the Litigation and/or Complaint; (c) Hudson's Bay's

response to and notices about the Data Security Incident; (d) the fraudulent use of any Alerted-On Payment Cards or any other payment cards issued by the Releasing Party (e) the cancellation and reissuance of any Alerted-On Payment Cards or any other payment cards issued by the Releasing Party; and (f) any expenses incurred investigating, responding to, or mitigating potential damage from the theft or illegal use of Alerted-On Payment Cards or any other payment cards issued by the Releasing Party or the Data Security Incident, including but not limited to any claims related to alleged damage to the financial services "ecosystem" (the "Released Claims").

9.2.    For the avoidance of doubt, the Released Claims include, without limitation, any claims, causes of actions, remedies, or damages that were, or could have been, asserted in the Litigation and also include, without limitation:  any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States; causes of action under the common or civil laws of any state in the United States, including, but not limited to, unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court of the United States for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

9.3.    As of the Effective Date, Defendants' Released Persons will be deemed to have completely released and forever discharged the Releasing Parties and Plaintiffs' Released Persons from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Litigation, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits. For the avoidance of doubt, Defendants' Released Persons release, as set forth in this Paragraph, does not include entities that do not meet the definition of either Releasing Parties or Plaintiffs' Released Persons.

9.4.  "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including the Settlement Class Representatives, does not know or suspect to exist in its favor at the time of the release of Defendants' Released Persons that, if known by it, might have affected its settlement with, and release of, the Defendants' Released Persons, or might have affected its decision not to object to and/or to participate in this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Settlement Class Representatives expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, waived the provisions, rights, and benefits conferred by Cal. Civ. Code §1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. §28-1-1602; North Dakota Cent. Code §9-13-02; and South Dakota Codified Laws §20-7-11), which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> *A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.*

(Emphasis added.) Settlement Class Members, including the Settlement Class Representatives, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Settlement Class Representatives expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims.  The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

9.5.  The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

9.6.   For purposes of clarity, the releases described herein are not intended to, and shall not apply, to claims relating to the enforcement of this agreement.

9.7.   As of the Effective Date, Settlement Class Members shall be enjoined from initiating, prosecuting, or otherwise pursuing any Released Claims, whether directly or in any other capacity, against any of Defendants' Released Persons or based on any actions taken by any of Defendants' Released Persons that are authorized or required by this Settlement or by the Final Approval Order and Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding or action asserting claims released by this Settlement

## **Attorneys' Fees, Costs, Expenses and Service Award**

10.1.   Hudson's Bay shall pay the Court-approved Service Awards, attorneys' fees, expenses, and costs of notice and administration as set forth in Section 4.4(b). .  Hudson's Bay shall make such payment to Class Counsel, by wire transfer, within 30 days of the Effective Date or within 30 days of the Court's approval of such fees, expenses, or costs of notice and administration, whichever is later.

10.2.   Notwithstanding anything herein, any decision by the Court, or modification or reversal or appeal of any decision by the Court, that fails to approve, in whole or in part, the amounts of the requested Service Award, attorneys' fees, expenses, and/or costs of notice and administration shall not constitute grounds for cancellation or will prevent the Settlement Agreement from becoming effective, nor will it be grounds for termination of this Agreement.  If the Court declines to approve, in whole or in part, the requested Service Award, attorneys' fees, expenses, and/or costs of notice and administration in the amount set forth in this Agreement, or at all, the remaining provisions of this Settlement Agreement will remain in full force and effect.  The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount of attorneys' fees, expenses, or costs of notice and administration, or Service Awards.

10.3.   Neither Class Counsel's application for nor any individual's entitlement to a Service Award shall be conditioned in any way upon such individual's support for this Settlement.

10.4.   Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' counsel of record.

## **Termination**

11.1.   Hudson's Bay shall have the sole discretion to terminate the Settlement Agreement if Settlement Class Members representing 10% of total Settlement Class Members identified on the Class List submit valid requests pursuant to Section 3.3 to opt-out of the Settlement

Class.  If Hudson's Bay elects to terminate the Settlement Agreement, it must notify Class Counsel that it intends to pursue that right pursuant to this provision, if any such right exists, no later than 14 days after the Opt-Out Deadline or 14 days after Hudson's Bay receives notice of op outs exceeding the 10% threshold.

11.2.   This Settlement Agreement may be terminated by either the Settlement Class Representative or Hudson's Bay by serving on counsel for the opposing Party; and filing with the Court a written notice of termination after any of the following occurrences:

    a.   Class Counsel and Hudson's Bay mutually agree to termination before the Effective Date;

    b.   the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

    c.   an appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

    d.   the Court, or any reviewing appellate court, incorporates material terms or provisions into, deletes or strikes material terms or provisions from, or materially modifies, amends, or changes the proposed Preliminary Approval Order, Preliminary Approval Order, proposed Final Approval Order and Judgment, Final Approval Order and Judgment, or Settlement; or

    e.   the Effective Date does not occur.

11.3.   In the event of a termination, as provided for in the Settlement, the Settlement shall be considered null and void; all of the Parties' obligations under the Settlement shall cease to be of any force and effect; and any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion; the Parties shall return to the *status quo ante* in the Litigation, as if the Parties had not entered into this Settlement.  In such an event, the fact of this Settlement and that Defendants did not oppose certification of any class under the Settlement, shall not be used or cited by any person or entity, including in any contested proceeding relating to certification of any proposed class. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including all defenses to class certification.  Further, if Hudson's Bay elects to terminate the Settlement pursuant to Section 11.1, the parties agree to conduct good faith settlement discussions during a 30-day period following

Hudson's Bay's notice of termination, including renewed mediation if feasible. If, after that 30-day period, a resolution is not reached, the case will go back into litigation, and Hudson's Bay will not oppose, and will join in Plaintiffs' request for, the immediate resumption of the litigation status that existed at the time of the mediation.

## No Admission of Liability

12.1.   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

   a.   Shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Litigation or in any other litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

   b.   Shall not be offered or received against any Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

   c.   Shall not be offered or received against any Defendant as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

   d.   Shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

   e.   Shall not be construed as or received in evidence as an admission, concession or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by any Defendants have any merit, or that damages recoverable under the Actions would not have exceeded the amounts provided for in this Agreement.

12.2.   Hudson's Bay disputes the claims alleged in the Litigation and does not, by this Settlement or otherwise, admit any liability or wrongdoing of any kind.  Hudson's Bay has agreed to enter into this Settlement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation and to be completely free of any further claims that were asserted or could have been asserted in the Litigation.

12.3.   Class Counsel and Settlement Class Representatives believe that the claims asserted in the Litigation have merit, and they have examined and considered the benefits to be obtained under the Settlement, risks associated with the continued prosecution of this complex, costly, and time-consuming Litigation, and likelihood of success on the merits of the Litigation.  Class Counsel and Settlement Class Representatives have concluded that the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

12.4.   The Parties understand and acknowledge that this Settlement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever.

12.5.   Neither the Settlement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is, may be deemed to be, or may be used as an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Defendants' Released Persons; or (b) is, may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of the Defendants' Released Persons in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## Miscellaneous

13.1.   Confidentiality. Prior to the filing of the motion for preliminary approval, the parties agree to keep the Settlement's terms and existence strictly confidential unless otherwise required by law or as reasonably determined by Defendants as necessary or appropriate in order to comply with financial reporting and disclosure obligations. The Limitations in this Section shall not apply to: (1) communications between Plaintiffs' Counsel and their clients (including Settlement Class Members); (2) any SEC or other contractual or legal disclosure obligations that Defendants may have; (3) Defendants' communications with its employees; (4) the ability of the Parties to communicate with the payment card brands about the Settlement, in order to facilitate notice to the class, as provided in the Settlement Agreement; (5) the ability of Defendants to notify its insurers about the settlement; (6) the ability of the Parties to communicate with necessary third parties for the purpose of

26

facilitating the administration of the Settlement.  The Parties may also disclose the Settlement's terms and existence to its insurers or auditors provided that they agree to maintain such information as confidential. Neither party shall make any oral or written statement about the other party that is intended or reasonably likely to disparage the other party, or otherwise degrade the other party's reputation in connection with the Settlement.

13.2.   <u>Escrow Account Bank.</u> Class Counsel, subject to Defendants' approval, which shall not be unreasonably withheld, shall select the bank at which the Escrow Account shall be deposited, and all funds shall be held exclusively in an interest-bearing account or accounts where the principal will not decrease and is fully insured by the United States Government or an agency thereof, including certificates of deposit, a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Account Bank shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Hudson's Bay shall not bear any responsibility for or liability related to the investment of the Escrow Account by the Escrow Account Bank.

13.3.   <u>Singular and Plurals.</u> As used in this Settlement, all references to the plural shall also mean the singular and all references to the singular shall also mean the plural whenever the context so indicates.

13.4.   <u>Binding Effect.</u> This Settlement shall be binding upon, and inure to the benefit of, the Successors and assigns of the Releasing Parties and Defendants' Released Persons.

13.5.   <u>Settlement Class Member Communications.</u>   Defendants shall not substantively communicate with any Settlement Class Member during the pendency of the settlement approval process regarding this Litigation, the Settlement, the decision to opt out, or relief being awarded in the Settlement.  For purposes of clarity, this provision restricts only communications regarding the Litigation and/or Settlement; it does not purport to limit any other communications.

13.6.   <u>Cooperation of Parties.</u> The Parties to this Settlement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, defend Court approval, and do all things reasonably necessary to complete and effectuate the Settlement, as described herein. Nothing in this provision is intended to limit any Party's right to terminate the Settlement in accordance with its terms.

13.7.   <u>Obligation to Meet and Confer.</u> Before filing any motion in the Court raising a dispute arising out of, or related to, this Settlement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

13.8.  Entire Agreement. This Settlement (along with any exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

13.9.  Drafting. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentem*. This Agreement is a collaborative effort of the Parties and their attorneys.

13.10.  Modification or Amendment. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties who executed this Agreement or their Successors.

13.11.  Waiver. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

13.12.  Successors. This Agreement shall be binding upon and inure to the benefit of the Successors and assigns of the Parties thereto.

13.13.  Survival. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

13.14.  No Conflict Intended. Any inconsistency between the headings used in this Settlement and the text of the paragraphs of this Settlement shall be resolved in favor of the text.

13.15.  Governing Law. The Settlement shall be construed in accordance with, and be governed by, the laws of the state of New York, without regard to the principles thereof regarding choice of law.

13.16.  Counterparts. This Settlement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument, even though all signatories do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

13.17.  Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction

with respect to the administration, consummation, and enforcement of the Settlement and shall retain jurisdiction for the purpose of enforcing all terms of the Settlement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and Settlement Administration.  As part of its agreement to render services in connection with this Settlement Agreement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

13.18.  <u>Exhibits</u>. The Exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

13.19.  <u>Notices.</u> All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

Joseph P. Guglielmo
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: 212-223-6444
jguglielmo@scott-scott.com

All notices to Hudson's Bay provided for herein, shall be sent by overnight mail and email to:

Kenneth I. Schacter
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000
kenneth.schacter@morganlewis.com

Gregory T. Parks
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
gregory.parks@morganlewis.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

13.20. <u>Authority.</u> Any person executing this Settlement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Settlement to all of the terms and provisions of this Settlement.

13.21. <u>Arms' Length Negotiation.</u> The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

DATED: April 15, 2021

Representative of Financial Institution Plaintiff
Arkansas Federal Credit Union

Representative of Financial Institution Plaintiff
The Summit Federal Credit Union

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone: 501-821-5575
Facsimile: 501-821-4474
karenhalbert@robertslawfirm.us

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412.322.9243
Facsimile: 412.231.0246
glynch@carlsonlynch.com

*Attorneys for Plaintiffs*

DATED: April 15, 2021

Representative of Financial Institution Plaintiff
Arkansas Federal Credit Union

Representative of Financial Institution Plaintiff
The Summit Federal Credit Union

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com

Karen S. Halbert
**ROBERTS LAW FIRM, PA**
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone: 501-821-5575
Facsimile: 501-821-4474
karenhalbert@robertslawfirm.us

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412.322.9243
Facsimile: 412.231.0246
glynch@carlsonlynch.com

*Attorneys for Plaintiffs*

31

DATED: April 23, 2021

Hudson's Bay Company ULC, by

_____
David J. Schwartz, Executive Vice President

Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), by

_____
David J. Schwartz, Executive Vice President

Lord & Taylor, LLC, by:

_____

Name (Printed):_____

Title:_____

_____
Kenneth I. Schacter
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000
kenneth.schacter@morganlewis.com

Gregory T. Parks (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
gregory.parks@morganlewis.com

***Attorneys for Defendants***

DATED: April 23, 2021

Hudson's Bay Company ULC, by

_____
David J. Schwartz, Executive Vice President

Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), by

_____
David J. Schwartz, Executive Vice President

Lord & Taylor, LLC, by:

_____
Name (Printed):  Ed Kremer

Title:  Plan Administrator

_____
Kenneth I. Schacter
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000
kenneth.schacter@morganlewis.com

Gregory T. Parks (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
gregory.parks@morganlewis.com

*Attorneys for Defendants*

Doc ID: b85ad28968d0b3a8f918de81d9efbce1623a8b6b