**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ARKANSAS FEDERAL CREDIT UNION and THE SUMMIT FEDERAL CREDIT UNION, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | Case No. 19-cv-4492 (PKC) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| HUDSON'S BAY COMPANY, SAKS FIFTH AVENUE LLC, SAKS & COMPANY LLC, SAKS INCORPORATED, and LORD & TAYLOR, LLC | ) ) ) ) ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Statement of Facts ....................................................................................................... 2

        A.      Factual Background ........................................................................................ 2

        B.      History of Litigation ...................................................................................... 3

        C.      Negotiations and Settlement ......................................................................... 4

        D.      Terms of the Settlement ................................................................................ 4

        E.      Preliminary Approval .................................................................................... 5

        F.      Implementation of the Notice Plan and Response from Class Members to Date ... 5

III.    Class Certification for Settlement Purposes is Appropriate ....................................... 6

        A.      The Requirements of 23(a) Are Met .............................................................. 7

                1.      Ascertainability ................................................................................. 7

                2.      Numerosity ........................................................................................ 8

                3.      Commonality ..................................................................................... 8

                4.      Typicality .......................................................................................... 9

                5.      Adequacy ......................................................................................... 10

        B.      The Requirements of Rule 23(b)(2) Are Met .............................................. 10

        C.      The Requirements of Rule 23(b)(3) Are Met .............................................. 11

                1.      Predominance ................................................................................. 11

                2.      Superiority ...................................................................................... 12

IV.     The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved by
        the Court ................................................................................................................... 13

        A.      The Settlement is Procedurally Fair as the Product of Good Faith, Informed,
                Arm's Length Negotiations .......................................................................... 14

        B.      The Settlement is Substantively Fair, Reasonable, and Adequate ..................... 14

                1.      The Complexity, Expense, and Likely Duration of the Litigation ........... 15

                2.      The Reaction of the Class to the Settlement ............................................ 16

                3.      The Stage of the Proceedings and Amount of Discovery ......................... 17

                4.      The Risks of Establishing Liability and Damages ................................... 18

                5.      The Risks of Maintaining the Class Action Through Trial....................... 20

                6.      The Ability of the Defendant to Withstand a Greater Judgment ............. 20

7.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation ........................ 21

V.     Notice to the Class Comported with Rule 23 and Due Process ........................................ 22

VI.    The Plan of Distribution Should be Granted Final Approval ........................................... 24

VII.   Conclusion ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 12

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................... 14

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011) ........................................................ 18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................... 15, 19

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
   887 F.3d 803 (7th Cir. 2018) ............................................................................... 19

*Cunningham v. Cornell Univ.*,
   2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ........................................................... 9

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................... 21

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ................................................................................... 6

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) .......................................................................... 17

*Diaz v. FCI Lender Servs., Inc.*,
   2020 WL 4570460 (S.D.N.Y. Aug. 7, 2020) ........................................................ 17

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...................................................... 21

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................ 22

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
   328 F.R.D. 35 (W.D.N.Y. 2018) .......................................................................... 10

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................................... 20

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
   337 F.R.D. 462 (S.D.N.Y. 2020) ............................................................................ 7

*Hall v. ProSource Techs., LLC*,
   2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ...................................................... 22

*Hecht v. United Collection Bureau, Inc.*,
   691 F.3d 218 (2d Cir. 2012) ................................................................................. 23

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. 2007) ................................................................ 12

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................... 15, 18

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ....................................................... 16

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ............................................ 24

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   371 F. Supp. 3d 1150 (N.D. Ga. 2019) ...................................................... 22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................... 17, 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ......................................................................... 10

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................... 14, 20

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................ 15

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ........................................................................... 7

*In re Kind LLC "Healthy & All Natural" Litig.*,
   337 F.R.D. 581 (S.D.N.Y. 2021) ................................................................... 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........................................................... 7

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................... 15, 18

*In re PaineWebber*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 20

*In re Petrobras*,
   862 F.3d 250 (2d Cir. 2017) ................................................................... 7, 12

*In re Sinus Buster Prods. Consumer Litig.*,
   2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ............................................ 16

*In re Terrorist Attacks on Sept. 11, 2001*,
   2021 WL 640257 (S.D.N.Y. Jan. 22, 2021) ............................................... 12

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) ................................................................ 19

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ...................................................................... 10

*In re Vitamin C*,
  06-MD-1738, 2012 WL 5289514 (E.D.N.Y Oct. 23, 2012) ................................... 24

*Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ............................................................ 12

*Jermyn v. Best Buy Stores, L.P.*,
  2012 WL 2505644 (S.D.N.Y. June 27, 2012) ............................................ 21

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....................................... 15, 16

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) .......................................................... 8, 11

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................... 13, 19, 20, 21

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................ 7

*Park v. The Thomson Corp.*,
  2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ........................................... 19

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2017) ............................................................ 8

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................... 13

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ............................................................ 9

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
  58 F. Supp. 3d 424 (S.D.N.Y. 2014) .............................................. 13, 17

*SELCO Cmty. Credit Union v. Noodles & Co.*,
  267 F. Supp. 3d 1288 (D. Colo. 2017) ................................................. 19

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................... 20

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) ....................................................... 9

*Suchanek v. Sturm Foods*, Inc.,
  764 F.3d 750 (7th Cir. 2014) ........................................................... 8

*Sykes v. Mel Harris & Assocs.*, LLC,
  285 F.R.D. 279 (S.D.N.Y. 2012) ....................................................... 8

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ........................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................. 7, 8, 11

v

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................. 13, 14, 17, 23

*Zivkovic v. Laura Christy LLC*,
  329 F.R.D. 61 (S.D.N.Y. 2018) ........................................................................................ 9

## Rules

Fed. R. Civ. P. 23 .................................................................................................... 7, 12
Fed. R. Civ. P. 23(a) ............................................................................................. 6, 7, 10
Fed. R. Civ. P. 23(a)(1) ................................................................................................. 8
Fed. R. Civ. P. 23(a)(2) ................................................................................................. 8
Fed. R. Civ. P. 23(a)(3) ................................................................................................. 9
Fed. R. Civ. P. 23(a)(4) ............................................................................................... 10
Fed. R. Civ. P. 23(b) .................................................................................................. 10
Fed. R. Civ. P. 23(b)(2) ...................................................................................... 10, 11, 13
Fed. R. Civ. P. 23(b)(3) ................................................................................... 7, 11, 12, 13
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 24
Fed. R. Civ. P. 23(e) .................................................................................................. 13

## Other Authorities

4 NEWBERG ON CLASS ACTIONS §13:44 (5th ed.) .......................................................... 13

Plaintiffs Arkansas Federal Credit Union and The Summit Federal Credit Union ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their Unopposed Motion for Final Approval of the Class Action Settlement  entered into between themselves and Defendants Hudson's Bay Company ULC (formerly known as Hudson's Bay Company) ("HBC"), Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), and Lord & Taylor, LLC ("Lord & Taylor") (collectively, "Hudson Bay" or "Defendants", and with Plaintiffs, the "Parties").

## I.   <u>INTRODUCTION</u>

Plaintiffs moved for preliminary approval of the Settlement[1] and authorization of the Notice Program on May 27, 2021. (ECF Nos. 84–88). On July 22, 2021, this Court granted preliminary approval to the Settlement and authorized the issuance of notice to the Settlement Class. *See* Preliminary Approval Order (ECF No. 91) ("PAO"). Pursuant to the PAO, Analytics Consulting LLC ("Analytics") was appointed as the Settlement Administrator to effectuate the Notice Program according to the terms set forth in the Preliminary Approval Order. (*Id.* ¶9).

The proposed Settlement will resolve all claims against Defendants. The Settlement provides the Settlement Class with significant monetary relief of up to $4,000,000. Settlement Class Members may receive: (1) $1.85 for each Alerted-On Payment Card (the "Fixed-Payment Claim"); and (2) up to $3,000 per Settlement Class Member as compensation for reimbursement paid to customers for fraudulent activity on Alerted-On Payment Cards incurred as a result of the Data Breach (a "Documented Out-of-Pocket Claim").  (SA §4.4(a)). The settlement also provides the Settlement Class with meaningful injunctive relief by requiring Defendants to make significant

---

[1]     All capitalized terms used herein have the same meanings as those used in the Settlement Agreement. A copy of the Settlement Agreement ("SA") was filed at ECF No. 86-1.

changes to its cybersecurity practices. (SA §4.8).

In the face of substantial challenges facing Plaintiffs and the Settlement Class through continued litigation, trial, and appeals, the Settlement is an excellent and immediate recovery for members of the Settlement Class. The terms of the Settlement—which were negotiated with the involvement of a respected neutral mediator and at arm's-length by lawyers experienced in complex litigation—fully satisfy the requirements of fairness, reasonableness, and adequacy, and therefore should be approved by this Court under applicable case law. Accordingly, Plaintiffs respectfully move for final approval and submit this memorandum of law in support of the proposed Settlement.

## II.     STATEMENT OF FACTS

### A.     Factual Background

For nearly a year, Hudson Bay suffered a nationwide breach of its point-of-sale systems that compromised millions of payment cards issued by Plaintiffs and the Settlement Class. Plaintiffs alleged that from approximately May 1, 2017, to March 31, 2018, Hudson Bay's security practices allowed the Fin7 crime syndicate to compromise Hudson Bay's computer systems and install malware at all Saks Fifth Avenue, Saks OFF 5TH, and Lord & Taylor store locations in North America (the "Data Security Incident"). (Second Am. Compl. ("SAC") ¶1 (ECF No. 65)). The malware accessed and exfiltrated payment card data belonging to Plaintiffs and the Settlement Class. (*Id.*). Plaintiffs also alleged that this stolen payment card data was then offered for sale and sold on the dark web by the hackers and used by cyber-criminals to make fraudulent purchases. (*Id.*).

Plaintiffs alleged that they suffered financial losses as a result of the Data Security Incident, including costs associated with canceling and reissuing Alerted-On Payment Cards identified by

Visa, Mastercard, and Discover (the "Card Brands"), and costs associated with reimbursing customers for fraudulent activity made on compromised payment cards. (*Id.* ¶7).

**B.       History of Litigation**

On May 16, 2019, Plaintiffs initiated this action on behalf of themselves and all other similarly situated financial institutions. (ECF No. 1). On August 27, 2019, Plaintiffs filed a First Amended Complaint that named additional parties as defendants. (ECF No. 51). Following an exchange of letters, on November 4, 2019, Hudson Bay moved to dismiss the First Amended Complaint. (ECF No. 59). By Order dated December 3, 2019, the Court granted Plaintiffs leave to file a Second Amended Complaint, which Plaintiffs filed that day. (ECF No. 65).

By Order dated August 2, 2019, the Court instructed Plaintiffs to coordinate discovery with plaintiffs in the related consumer action, *In re Hudson's Bay Company Data Security Incident Consumer Litigation*, 18-cv-8472 (PKC) (S.D.N.Y.) (the "Consumer Litigation"). (ECF No. 46). The Court later stayed discovery by an Order dated September 26, 2019, (ECF No. 57). Then on March 25, 2020, the Court partially lifted the discovery stay to allow the Parties to pursue third-party discovery as to certain payment card brands in advance of and for use in connection with an agreed-upon mediation. (ECF No. 69).

On August 2, 2020, Defendant Lord & Taylor, LLC filed a voluntary petition for relief under Chapter 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia captioned *In re: Le Tote, Inc.*, Case No. 20-33332 (KLP). On August 5, 2020, Defendants filed a Suggestion of Bankruptcy, resulting in an automatic stay of this action. (ECF No. 74). By Order dated March 26, 2021, the Court lifted the automatic stay for the limited purpose of allowing the parties to finalize their Settlement.

### C.    Negotiations and Settlement

The proposed Settlement is the result of good faith, arm's-length negotiation. (Guglielmo Decl. ¶¶3, 7–8)[2]. Beginning in March 2020, the Parties entered into discussion about a possible resolution of the case. (Guglielmo Decl. ¶7). On May 28, 2020, the parties participated in a full-day mediation session overseen and guided by the Hon. Diane M. Welsh (Ret.). (Guglielmo Decl. ¶7). The Parties continued their negotiations over the next several months and on July 23, 2020, the Parties reported to the Court that they had reached a settlement in principle. (ECF No. 72). A term sheet was executed on November 24, 2020. (Guglielmo Decl. ¶7). Following further extensive negotiations regarding the Settlement's terms, the Settlement was finalized and executed on April 23, 2021. (Guglielmo Decl. ¶7). The Parties did not discuss attorney's fees, costs, or expenses with each other prior to reaching agreement on the essential terms of the Settlement. (Guglielmo Decl. ¶8).

### D.    Terms of the Settlement

The Settlement provides the Settlement Class with significant monetary relief of up to $4,000,000. Settlement Class Members may elect to receive: (1) $1.85 for each Alerted-On Payment Card (the "Fixed-Payment Claim"); and (2) up to $3,000 per Settlement Class Member as compensation for reimbursement paid to customers for fraudulent activity on Alerted-On Payment Cards incurred as a result of the Data Breach (a "Documented Out-of-Pocket Claim"). (SA §4.4(a)). Hudson Bay will pay up to $3,000,000 towards Fixed Payment Claims, and up to $1,000,000 towards Documented Out-of-Pocket Claims. (*Id.*).

---

[2]    Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Guglielmo Declaration") (ECF No. 86).

Hudson Bay will also pay up to $1,100,000 towards attorneys' fees, expenses of litigation, service awards (in amounts subject to the Court's approval), and notice and administration expenses. (SA §4.4(b)). Finally, Hudson Bay has agreed to certain injunctive relief, including the adoption or maintenance of several specified data security measures designed to reduce the likelihood of further data security incidents. (SA §4.8)).

### E.  Preliminary Approval

On May 27, 2021, Plaintiffs filed an unopposed motion for preliminary approval of the Settlement, provisional certification of the Settlement Class, and approval of the proposed notice program. (ECF Nos. 85–88). The Court granted the motion and issued a Preliminary Approval Order on July 22, 2021, provisionally certifying the proposed Settlement Class, preliminary approving the Settlement, appointing Analytics as the Settlement Administrator, and approving the proposed Notice Program with certain modifications to the objection procedures. (ECF Nos. 91–92).

### F.  Implementation of the Notice Plan and Response from Class Members to Date

Consistent with the Settlement and the Preliminary Approval Order, Analytics effectuated notice to the class Notice Program on August 23, 2021, which included mail notice to approximately 4,729 class members, publication notice, and the establishment of a case-specific website. (Schmidt Decl. ¶¶4-9)[3]. "Analytics estimates that Notice was successfully delivered to over 99% of the Class." (*Id.* ¶6). To date, no members of the Settlement Class have opted out and no members have objected to the Settlement. (Schmidt Decl. ¶12; Guglielmo Supp. Decl. ¶2)[4].

---

[3]    Declaration of Kari L. Schimdt ("Schmidt Decl.") filed concurrently herewith.
[4]    Supplemental Declaration of Joseph P. Guglielmo ("Guglielmo Supp. Decl.") filed concurrently herewith.

Although the claims deadline is not until February 17, 2022, as of October 27, 2021, Analytics has received 205 claims from members of the Settlement Class. (Schmidt Decl. ¶11).

## III.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of:

> All financial institutions in the United States (including its Territories and the District of Columbia) that issued Alerted-On Payment Cards in connection with the Data Security Incident at Defendants' stores from May 1, 2017 to March 31, 2018.
>
> Excluded from the Settlement Class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendants; parents, subsidiaries, and any entity in which Defendants have a controlling interest; and financial institutions who timely and validly request exclusion from the Settlement Class.

(ECF No. 91, at 2). Since that time there have been no developments that would alter the propriety of certification. The Settlement Class should now be finally certified for settlement purposes.

"Before [class] certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Rule 23(a) requires "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "These requirements are generally referred to as numerosity, commonality, typicality, and adequacy of representation." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 460 (S.D.N.Y. 2018). In addition, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to the class members predominate

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs "seeking class certification bear[] the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). In meeting this burden, Plaintiffs do not need to have "a protracted mini-trial of substantial portions of the underlying litigation," *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), but the Court must still conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### A.     The Requirements of 23(a) Are Met

#### 1.     Ascertainability

In addition to the explicit requirements of Rule 23(a), the Second Circuit recognizes the implied Rule 23(a) requirement of ascertainability. *See Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462, 469 (S.D.N.Y. 2020). The ascertainability requirement is a "modest threshold" and is satisfied when a class can be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). It does not require a showing of administrative feasibility. *Id.* at 265. The Settlement Class is ascertainable because membership is limited to financial institutions who issued Alerted-On Payment Cards in connection Defendants' Data Security Incident and is identifiable based on the records maintained by Visa, MasterCard, and Discover. "Because of the nature of the Settlement Class and the third-party discovery obtained by Class Counsel, the identity of and last known address for each Settlement Class Member was available to Analytics." (Schmidt Decl. ¶3). The Settlement Class is thus ascertainable.

### 2.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no magic number for when numerosity is satisfied, the requirement is presumptively met when the class has at least 40 members. *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2017). Numerosity is satisfied because there are at least 4,736 Settlement Class Members, (Schmidt Decl. ¶4), rendering joinder impracticable.

### 3.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common" to the proposed class. Fed. R. Civ. P. 23(a)(2). "The Rule does not require all questions of law or fact to be common. Indeed, even a single common question will suffice." *Sykes v. Mel Harris & Assocs.*, LLC, 285 F.R.D. 279, 286 (S.D.N.Y. 2012) (citing *Dukes*, 564 U.S. at 359). Rather, Rule 23(a)(2) simply "requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). As such, commonality is satisfied "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Id.* (quoting *Suchanek v. Sturm Foods*, Inc., 764 F.3d 750, 756 (7th Cir. 2014)).

Here, the commonality requirement is readily satisfied. Plaintiffs and members of the Settlement Class all bring identical claims arising from the exfiltration of payment card data from Hudson Bay's systems. The elements of Plaintiffs' principal claims – negligence and negligence *per se* – are subject to proof by common evidence. Specifically, Plaintiffs contend that the issue of duty and whether Defendants breached that duty would be established through common proof focusing on what Defendants did or did not do, proof that is common to each Settlement Class

Member. Any differences in the way financial institutions responded to the Data Security Incident would go to the amount of their damages, not to the fact of their damage, and would not defeat certification. *See*, *e.g.*, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407-08 (2d Cir. 2015) (finding that individual questions of damages, standing alone, will not defeat class certification).

### 4. Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the proposed class. Fed. R. Civ. P. 23(a)(3). "In the Second Circuit, analysis of Rule 23(a)(3)'s typicality requirement often converges with that of commonality." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 70 (S.D.N.Y. 2018). "When the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met." *Stinson v. City of New York*, 282 F.R.D. 360, 371 (S.D.N.Y. 2012). Accordingly, typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 595 (S.D.N.Y. 2021).

Plaintiffs' claims are typical of the claims of members of the Settlement Class because they were all injured by Hudson Bay's failure to secure its systems and the resulting exfiltration of their payment card data by cybercriminals. *See also Cunningham v. Cornell Univ.*, 16-CV-6525 (PKC), 2019 WL 275827, at *7 (S.D.N.Y. Jan. 22, 2019) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

### 5.      Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy [analysis] entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

As set forth above, because Plaintiffs and members of the Settlement Class have the same interest in the relief afforded by the Settlement, Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of members of the Settlement Class. Plaintiffs and members of the Settlement Class do not have divergent interests because they all suffered the same type of damage. Plaintiffs have also actively participated in all phases of the litigation, warranting their appointment as Settlement Class Representatives. (Guglielmo Decl. ¶9; Guglielmo Supp. Decl. ¶3). Further, Plaintiffs are represented by qualified and competent counsel who has extensive experience and expertise prosecuting complex class actions, including actions on behalf of financial institutions similar to the instant case. (Guglielmo Decl. ¶2 & Firm Resume Ex. 2); *see Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 49 (W.D.N.Y. 2018). Class Counsel has devoted substantial time and resources to this action and has vigorously protected the interests of the Settlement Class.

### B.      The Requirements of Rule 23(b)(2) Are Met

Once the prerequisites of Rule 23(a) have been met, "a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b)." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001)). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification pursuant to Rule 23(b)(2) is appropriate where "a single injunction . . . would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015) ("'[R]elief to each member of the class,' does not require that the relief to each member of the class be identical, only that it be beneficial.")

Plaintiffs readily satisfy the standards under Rule 23(b)(2) because Hudson Bay's alleged negligence in securing its systems is a matter of general concern and the relief secured will benefit all Settlement Class Members. The injunctive relief Plaintiffs have secured includes Hudson Bay's agreement to hire a qualified security assessor on an annual basis to ensure compliance with PCI-DSS requirements, to conduct penetration testing of its systems, and to encrypt, tokenize, or otherwise render payment card data unreadable. (SA §4.8). Because this relief benefits the class as a whole, certification is appropriate under Rule 23(b)(2).

### C. The Requirements of Rule 23(b)(3) Are Met

#### 1. Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry asks "whether classwide resolution would substantially advance the case, examining whether certification will reduce the range of issues in dispute and promote judicial economy." *Johnson*, 780 F.3d at 138 (internal citations omitted). Class-wide issues predominate where "(1) resolution of any material legal or factual questions . . . can be achieved through generalized proof," and (2) these [common] issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d at 270 (internal citations omitted).

Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement for purposes of this Settlement because the liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. As stated above, the central issue in this litigation is whether Hudson Bay acted negligently in securing its systems. Because Hudson Bay's alleged negligence affected all Settlement Class Members, questions regarding the sufficiency of Hudson Bay's efforts "are about the most perfect questions for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *In re U.S. Foodserv. Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL01570GBDSN, 2021 WL 640257, at *5 (S.D.N.Y. Jan. 22, 2021) ("[W]hen a jury can resolve questions of liability with a single decision applicable to the whole class, and the only individual question left to resolve relates to damages, class certification is typically warranted.").

### 2. Superiority

Rule 23(b)(3) mandates a finding that the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As the Supreme Court has noted, the "superiority" (and predominance) requirement was added to the Federal Rules "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). This is certainly the case here.

Plaintiffs contend that class adjudication of this case is superior to individual adjudication because it would be highly inefficient to require Settlement Class Members to file individual cases

to obtain their own relief, especially where Plaintiffs and Class Counsel have already secured it

their behalf. *See Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97,

120 (S.D.N.Y. 2011) (finding that superiority was satisfied because class members did not have

an overwhelming interest to proceed individually, multiple lawsuits would have been inefficient

and costly, and multiple lawsuits could have reduced the prospects for recovery by decreasing

class members' bargaining power).

Accordingly, the Court should certify the Settlement Class under Rules 23(b)(2) and

23(b)(3).

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Rule 23(e) requires that any compromise of claims brought on a class basis be subject to

judicial review. Fed. R. Civ. P. 23(e). "The law favors settlement, particularly in class actions and

other complex cases where substantial resources can be conserved by avoiding lengthy trials and

appeals." 4 NEWBERG ON CLASS ACTIONS §13:44 (5th ed.). Importantly, The Second Circuit

recognizes that "[t]he compromise of complex litigation is encouraged by the courts and favored

by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005).

Ultimately the general standard by which courts are guided when deciding whether to grant final

is whether the settlement is "procedurally and substantively fair, reasonable, and adequate." *Morris*

*v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012). "This requires

consideration of the negotiating process leading up to the settlement, i.e., procedural fairness, as

well as the settlement's substantive terms, i.e., substantive fairness." *Sakiko Fujiwara v. Sushi

Yasuda Ltd.*, 58 F. Supp. 3d 424, 432 (S.D.N.Y. 2014). As demonstrated below, the Settlement

satisfies the criteria for final approval.

### A.    The Settlement is Procedurally Fair as the Product of Good Faith, Informed, Arm's Length Negotiations

To determine the procedural fairness of a class action settlement, "courts examine the negotiating process leading to the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 116.

Here, the Settlement is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation. (Guglielmo Decl. ¶¶3, 7–8). Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and received information both from Hudson Bay and from third parties. (*Id.* ¶¶10–14). This information allowed Class Counsel to evaluate the strengths and weaknesses of Plaintiffs' and the Settlement Class Members' claims and the appropriate basis upon which to settle them. (*Id.*). Furthermore, negotiations between the Parties were supervised by a highly skilled mediator, the Hon. Diane M. Welsh (Ret.), (Guglielmo Decl. ¶7), which provides added assurance that the settlement negotiations were free of collusion. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("[A] mediator's involvement in settlement negotiations can help demonstrate their fairness."). As such, the Settlement is procedurally fair.

### B.    The Settlement is Substantively Fair, Reasonable, and Adequate

In assessing whether a class action settlement is substantively fair, courts in the Second Circuit apply the *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). However, this list of factors is not a checklist; not every factor must weigh in favor of approval. Rather, a court considers "the totality of these factors in light of the particular circumstances" in making its ultimate determination of approval. *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012).

### 1. The Complexity, Expense, and Likely Duration of the Litigation

"The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311–12 (S.D.N.Y. 2020). Courts in this Circuit have recognized that "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (noting at settlement avoids the expenses and delays of trial and ensures "a speedy, risk-free recovery for the class").

This Action qualifies as complex. The Settlement Class encompasses thousands of financial institutions throughout the county. (Schmidt Decl. ¶4). Defendants' motion to dismiss the First Amended Complaint—while superseded by Plaintiffs' subsequent amendment—provides a preview of numerous complex legal and factual issues that would have required resolution if the case proceeded, such as the appropriate choice of law, whether the contracts generally underlying the payment card system affect Plaintiffs' tort-based claims, and additional questions regarding the elements of Plaintiffs' claims, such as causation and the scope of Defendants' duty. (Defs.'

Mem. in Supp. of Mot. to Dismiss, ECF No. 60 at 9–22).  While the Parties have already devoted time and expense to litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.

Continued litigation would result in additional expense and delay because it would subject the Parties to the "time and expense of deposition discovery, contested motions for class certification, and a likely motion for summary judgment by the Defendants," steps that could "take years at great expense." *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS), 2014 WL 5819921, at *8 (E.D.N.Y. Nov. 10, 2014). Likewise, if the litigation continued, the Parties would likely retain experts to opine on the reasonableness of complex security decisions made by Hudson Bay and the technical aspects of the Data Security Incident, and would present their analyses in expert reports, at depositions, and at trial. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (noting that the strong likelihood of pursuing expert discovery weighed in favor of final approval).

Moreover, by reaching a favorable settlement at this stage of the litigation, the Parties will avoid significant expense and delay and instead, provide immediate and tangible relief to the Settlement Class. *See Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) ("By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs avoid significant expense and delay and ensure a speedy, risk-free recovery for the class."). Accordingly, this factor weighs strongly in favor of approval of the Settlement.

## 2.      The Reaction of the Class to the Settlement

The second *Grinnell* factor is the reaction of the Class to the Settlement. This factor "is perhaps the most significant factor to be weighted in considering [a settlement's] adequacy." *In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018). "If only

a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 118; *see also Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016) ("[T]he absence of objections by the class is extraordinarily positive and weighs in favor of settlement.").

The Settlement Class's early, positive response to the notice demonstrates support for the Settlement. To date, there have been **no** objections received since the Settlement Administrator implemented the comprehensive notice program. (Guglielmo Supp. Decl. ¶2). Similarly, there have been **no** requests for exclusion received from any of the approximately 4,736 Class Members. (Schmidt Decl. ¶¶4 & 12). By contrast, the 205 claims received to date suggest that Settlement Class Members desires to receive the benefits Class Counsel obtained through negotiation. As such, this factor weighs strongly in favor of final approval.

### 3.    The Stage of the Proceedings and Amount of Discovery

The third *Grinnell* factor considers the stage of the proceedings and amount of discovery. "In evaluating the stage of the case and the discovery taken, courts attempt to determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014). While the parties need not engage in extensive discovery, they must have conduct "a sufficient factual investigation . . . to afford the Court the opportunity to 'intelligently make … an appraisal' of the Settlement.'" *Diaz v. FCI Lender Servs., Inc.*, No. 17-CV-8686 (AJN), 2020 WL 4570460, at *4 (S.D.N.Y. Aug. 7, 2020) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (ellipsis in original)).

Here, Class Counsel conducted an in-depth factual investigation into the claims underlying the action. (Guglielmo Decl. ¶¶10–14). Class Counsel interviewed Plaintiffs and conducted legal

research into the claims, including determining the specific claims alleged in the complaint. (*Id.*) Class Counsel also obtained through informal discovery with Hudson Bay the results of an independent third-party report examining the cause of the Data Breach. (*Id.*) This report was critical to informing the Plaintiffs to the strength of their claims and to Hudson Bay's liability. (*Id.*) Further, although first-party discovery was stayed by the Court as of September 26, 2019, Class Counsel served third-party discovery on the card brands, Hudson Bay's acquiring bank JPMorgan Chase, and Le Tote, Inc., which acquired Lord & Taylor. (*Id.* ¶12). The information required from these various sources permitted Class Counsel to negotiate the Settlement with a clear understanding of the underlying facts and the strengths and weaknesses of Plaintiffs' claims. (Guglielmo Decl. ¶¶13–14). Accordingly, this factor weighs in favor of Settlement. *See Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211 LTS HP, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) ("Although they did not engage in formal discovery, such is not required for a settlement to be adequate, if the parties obtained sufficient information to understand the claims and negotiate settlement terms.").

### 4.      The Risks of Establishing Liability and Damages

The fourth and fifth *Grinnell* factors evaluate the risks of establishing liability and damages. In assessing these factors, the Court "need not decide the merits of the case, resolve unsettled legal questions, or attempt to predict the outcome." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020). Rather, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.

Here, Plaintiffs have a strong case against Hudson Bay; however, winning a judgment would require surmounting several additional legal hurdles, including those previewed by

18

Defendants' motion to dismiss, with a recovery at the end of the day being far from certain. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) ("Litigation inherently involves risks. Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits.") (internal citations omitted). Specifically, Hudson Bay has argued that Plaintiffs' primary cause of action is not cognizable, an argument that while Plaintiffs believe is unfounded, has been accepted by courts in other jurisdictions, and could stymie the Settlement Class's recovery if accepted by the court. *See e.g.*, *Cmty. Bank of Trenton v. Schnuck Markets, Inc.,* 887 F.3d 803, 826 (7th Cir. 2018) (affirming the dismissal of plaintiff financial institutions' claims arising out of a data breach); *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 (D. Colo. 2017) (same). In addition, there is the possibility that the Court would not certify a nationwide class. *See e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance). And even if Plaintiffs were successful in certifying a class, they risk a jury finding against them as to the liability and/or damages.

In addition, "[p]roving damages in this action would have been extremely complicated and would almost certainly require significant expert testimony and analysis." *Park v. The Thomson Corp.*, No. 05 Civ. 2391 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008). Although Plaintiffs believe that expert testimony would provide evidence sufficient to establish the measure of damages in this case, it is possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, find Defendants' expert more persuasive, or agree with the Class's expert but award a reduced amount of damages to the Class. *See In re PaineWebber*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("This issue would undoubtedly devolve into a battle of experts

whose outcome cannot be accurately ascertained in advance."); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019). As such, Plaintiffs faced the risk of a non-monetary recovery for members of the Settlement Class even if they were able to establish Hudson Bay's liability.

In the face of these risks, and in Class Counsel's experienced and realistic opinion, the Settlement as proposed represents a significant recovery to the Settlement Class. (Guglielmo Decl. ¶¶14–18). As such, this factor favors final approval.

### 5.      The Risks of Maintaining the Class Action Through Trial

The sixth *Grinnell* factor considers the risks of maintaining the class action through trial. This factor weighs in favor of settlement where "it is likely that defendants would oppose class certification if the case were to be litigated." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019). Here, Hudson Bay would likely oppose class certification, arguing that individual issues predominate over common issues. Further, even assuming that Plaintiffs were successful in certifying a class, there is a risk that Hudson Bay would ask the Court to reconsider or amend the certification decision, or appeal it, and the Second Circuit would have discretion to consider interlocutory review under Rule 23(f). *See Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8831 (CM), 2014 WL 1224666, at *11 & n.62 (S.D.N.Y. Mar. 24, 2014); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). As a result, this factor weighs in favor of Settlement.

### 6.      The Ability of the Defendant to Withstand a Greater Judgment

The seventh *Grinnell* factor looks to the defendant's ability to withstand a greater judgment. However, the Second Circuit has held that this factor is not dispositive and need not affect the conclusion that the settlement is within the range of reasonableness. *D'Amato v.*

*Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *7 (S.D.N.Y. June 27, 2012) (factor is "typically relevant only where judgment may risk bankruptcy or 'severe economic hardship'").

Here, neither Plaintiffs nor Class Counsel have direct knowledge of this factor as to each Defendant. It is possible that some of them could withstand greater judgment for an amount significantly greater than the Settlement. Nonetheless, as a retailer during an ongoing pandemic, Hudson Bay's financial security is far from clear, and it is telling that these proceedings were stayed because Le Tote, Inc., which purchased Defendant Lord & Taylor from HBC, declared bankruptcy. According, the Court should find the factor weighs in favor of approval, or, alternatively, "assign 'relatively little weight' to this factor." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620–21 (S.D.N.Y. 2012).

> **7.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The last two *Grinnell* factors are the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. "The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015). "Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations omitted). Accordingly, the focus is on whether the settlement "represents a reasonable one in light of the many uncertainties the class faces." *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016)

As discussed above, Plaintiffs face numerous uncertainties – whether they can certify a class, establish liability and damages, and ultimately receive a recovery. On the other hand, the Settlement provides immediate and substantial relief to the Settlement Class in the form of monetary relief to compensate for past injuries and injunctive relief that will reduce the risk of a similar breach occurring in the future. (SA §§4.4(a) & 4.8) (Guglielmo Decl. ¶¶15–18). This relief compares favorably with that achieved in similar data breach actions. *See*, *e.g.*, Memorandum of Law in Support of Financial Institution Plaintiffs' Motion for Final Approval of Class Action Settlement, *In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, (D. Minn. Apr. 11, 2016), ECF No. 745 at 4–5 ($1.50 per claimed on payment card, or up to 60% of documented fraud); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1175 (N.D. Ga. 2019) ($5.5 million allocated to pay fixed payment and documented out-of-pocket claims); Settlement Agreement and Release, *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356, (W.D. Wash. Apr. 26, 2019), ECF. No. 164-1 at 6, ¶33(a) ($2.00 per claimed on account); Final Order and Judgment, *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 343 (N.D. Ga. Sept. 22, 2017) (recovery of approximately $2.00 per affected payment card and up to 60% of documented fraud). Given these circumstances, this factor also favors final approval and thus the Court should find the Settlement falls within the range of reasonableness.

## V.     <u>NOTICE TO THE CLASS COMPORTED WITH RULE 23 AND DUE PROCESS</u>

Notice to the Settlement Class satisfied Rule 23 and the constitutional requirements of due process. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 113. "To comport with due process, the notice provided to absent

class members must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012).

Pursuant to the Court's Order authorizing notice (ECF No. 91), Analytics – the Court appointed Settlement Administrator – has provided individual notice via mail to approximately 4,729 Settlement Class members. (Schmidt Decl. ¶3). Between August 23, 2021, and September 1, 2021, Analytics also published banner advertisements in the ABA Banking Journal Digital Edition, a publication typically read by bank and credit union executives, promoting the Settlement. (Schmidt Decl. ¶7). Each banner advertisement ran for a period of 30 consecutive days, last ending on October 1, 2021. (*Id.*). Further, Analytics has created a case-specific website on which it posted all relevant documents, including the Long Notice Form, Settlement Agreement, and Preliminary Approval Order. (Schmidt Decl. ¶9).

Through this comprehensive process, individual notice has been attempted for all Class Members who could be identified through reasonable efforts. As a result, "Analytics estimates that Notice was successfully delivered to over 99% of the Class." (Schmidt Decl. ¶6). The multi-faceted combination of direct mail notice, publication notice, and a dedicated settlement website constitutes "the best notice . . . practicable under the circumstances" Fed. R. Civ. P. 23(c)(2)(B). Accordingly, the Notice Program is in line with notice programs routinely approved in this Circuit. *See In re Vitamin C*, No. 06-MD-1738, 2012 WL 5289514, at *8 (E.D.N.Y Oct. 23, 2012) ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The . . . distribution of the class notice was adequate.").

## VI.    <u>THE PLAN OF DISTRIBUTION SHOULD BE GRANTED FINAL APPROVAL</u>

To warrant final approval, the distribution plan must "meet the standards by which the settlement was scrutinized–namely, it must be fair and adequate." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018). "The formula established for allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* "The principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016).

The Plan of Distribution (ECF No. 86-5) satisfies these requirements. The plan provides for a simple distribution to members of the Settlement Class who submit a valid Claim Form. Approved Claimants will receive $1.85 for each Alerted-On Payment Card they identify in their Claim Form, (*id.* ¶III), and up to $3,000 for valid Documented Out-of-Pocket Claims relating to fraud reimbursement amounts paid to customers for fraudulent activity on alerted-on Payment Cards incurred as a result of the Data Security Incident. (*Id.* ¶IV). If the value of Approved Claims for Fixed Payment Claims exceeds $3,000,000 or if the value of Approved Claims for Documented Out-of-Pocket Claims exceeds $1,000,000, Settlement Class Members will receive distributions in reduced amounts according to an equitable *pro rata* formula that treats all Settlement Class Members fairly by awarding them distributions based on the proportionate value of the claims. (*Id.* ¶VIII).

Courts have approved similar plans of distribution data breach cases involving payment cards. *See, e.g.*, Final Order and Judgment, *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 343 (N.D. Ga. Sept. 22, 2017) (recovery of approximately

$2.00 per affected payment card and up to 60% of documented fraud); *In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, (D. Minn. Apr. 11, 2016), ECF No. 745 at 4-5 ($1.50 per claimed on payment card, or up to 60% of documented fraud).

The Plan of Distribution is fair and treats Settlement Class Members equitably. As such, it warrants the Court's final approval.

## VII.   <u>CONCLUSION</u>

For the above-mentioned reasons, Plaintiffs respectfully request that this Court grant final approval to the Settlement Agreement, certify the Settlement Class, and enter the Final Approval Order.

Dated:  November 1, 2021                    Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
Carey Alexander
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

Karen S. Halbert
Michael L. Roberts
Jana K. Law
**ROBERTS LAW FIRM, PA**

P.O. Box 241790
Little Rock, AR 72223
Telephone: 501-821-5575
Facsimile: 501-821-4474
karenhalbert@robertslawfirm.us
mikeroberts@robertslawfirm.us
janalaw@robertslawfirm.us

Gary F. Lynch
**LYNCH CARPENTER**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com

*Attorneys for Plaintiffs Arkansas Federal Credit
Union and The Summit Federal Credit Union*