**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ARKANSAS FEDERAL CREDIT UNION and THE SUMMIT FEDERAL CREDIT UNION, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | Case No. 19-cv-4492 (PKC) |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| HUDSON'S BAY COMPANY, SAKS FIFTH AVENUE LLC, SAKS & COMPANY LLC, SAKS INCORPORATED, and LORD & TAYLOR, LLC | ) ) ) ) ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................... 1

II.    SUMMARY OF CLASS COUNSEL AND THE SETTLEMENT CLASS
      REPRESENTATIVE'S WORK .............................................................................. 2

III.   ARGUMENT ......................................................................................................... 4

    A.    The Requested Attorney's Fees Are Fair and Reasonable and Should Be
        Approved ........................................................................................................ 4

        1.    The Requested Fee Is a Reasonable Percentage of the Constructive
            Common Fund ...................................................................................... 5

        2.    The *Goldberger* Factors Further Support the Reasonableness of the
            Requested Fee ...................................................................................... 8

            a.    Time and Labor Expended by Counsel / Lodestar Cross Check .... 8

            b.    The Magnitude and Complexities of the Litigation ...................... 10

            c.    The Risk of Litigation .................................................................. 11

            d.    The Quality of Representation ...................................................... 13

            e.    The Requested Fee in Relation to the Settlement ........................ 14

            f.    Public Policy Considerations ....................................................... 14

    B.    Plaintiffs Counsel's Request for Reimbursement of Expenses is Reasonable. .... 15

    C.    Application for Service Awards ................................................................... 16

IV.   CONCLUSION ................................................................................................... 18

i

## <u>TABLE OF AUTHORITES</u>

**Page(s)**

**Cases**

*Athale v. Sinotech Energy Ltd.,*
  2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) .......................................................... 10

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
  504 F. Supp. 3d 265 (S.D.N.Y. 2020) ............................................................... 7, 15, 16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................ 5

*CDS Litig*,
  2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ..................................................... 9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ............................................................................. 7

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................. 5, 11

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
  887 F.3d 803 (7th Cir. 2018) .......................................................................... 12

*Defendants." Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................................... 13

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................................... 6, 14

*Florin v. Nationsbank of Georgia, N.A.*,
  60 F.3d 1245 (7th Cir. 1995) ........................................................................... 9

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...................................................................... Passim

*Grice v. Pepsi Beverages Co.*,
  363 F. Supp. 3d 401 (S.D.N.Y. 2019) ..................................................... 5, 7, 8, 17

*Henry v. Little Mint, Inc.*,
  2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................................................ 15

*In re Agent Orange Prod. Liab. Litig.*,
  818 F.2d 226 (2d Cir. 1987) ............................................................................. 9

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................................ 7

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................... 13

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................................. 5

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................ 5, 8, 17

*In re CRM Holdings, Ltd. Sec. Litig.*,
634 F. App'x 59 (2d Cir. 2016) ................................................................ 15

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019) .................................................... 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...................................................... 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................... 7, 11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................... 7

*In re Home Depot Inc.*,
931 F.3d 1065 (11th Cir. 2019) ............................................................... 6

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................... 7

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................... 15, 18

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................ 13

*In re MetLife Demutalization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................... 13

*In re Nadsdaq Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................. 10

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) ..................................................................... 12

*In re Target Corp. Customer Data Sec. Breach Litig.*,
892 F.3d 968 (8th Cir. 2018) .................................................................. 7

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................. 10, 11

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007) ............................................................. 12

*Jemine v. Dennis*,
901 F. Supp. 2d 365 (E.D.N.Y. 2012) ..................................................... 10

*Karic v. Major Auto. Companies, Inc.*,
2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) .......................................... 17

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................. 11, 13, 14

iii

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ................................................................... 5, 7, 8

*McDaniel v. Cty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010) .......................................................................... 4

*McGreevy v. Life Alert Emergency Response, Inc.*,
    258 F. Supp. 3d 380 (S.D.N.Y. 2017) ........................................................... 8

*Melito v. Experian Mktg. Sols., Inc.*,
    923 F.3d 85 (2d Cir. 2019) ......................................................................... 16

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ......................................................... 10

*Park v. Thomson Corp.*,
    633 F. Supp. 2d 8 (S.D.N.Y. 2009) ....................................................... 15, 16

*Reiter v. MTA New York City Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006) .......................................................................... 8

*Seekamp v. It's Huge, Inc.*,
    2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) ............................................. 14

*SELCO Cmty. Credit Union v. Noodles & Co.*,
    267 F. Supp. 3d 1288 (D. Colo. 2017) ........................................................ 12

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................................... 11, 14

*Thompson v. Cmty. Bank, N.A.*,
    2021 WL 4084148 (N.D.N.Y. Sept. 8, 2021) .............................................. 17

*Velez v. Novartis Pharms. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................................... 6

*Veridian Credit Union v. Eddie Bauer, LLC*,
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) .................................................. 12

*Yeagley v. Wells Fargo & Co.*,
    2008 WL 171083 (N.D. Cal. Jan. 18, 2008) ................................................. 6

## Other Authorities

Manual for Complex Litigation (4th) § 21.7 ....................................................... 6

Plaintiffs Arkansas Federal Credit Union and The Summit Federal Credit Union ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards.

## I.    <u>INTRODUCTION</u>

Class Counsel[1] vigorously and efficiently prosecuted this litigation and was able to achieve an excellent result for the Settlement Class without expending unnecessary time or resources. Under the terms of the Settlement Agreement, benefits worth $5.1 million, plus injunctive relief, have been made available to the Settlement Class.

The Settlement Agreement provides the Settlement Class with direct and meaningful monetary and injunctive relief.  Pursuant to the Settlement Agreement, Defendants Hudson's Bay Company ULC (formerly known as Hudson's Bay Company) ("HBC"), Saks Fifth Avenue LLC, Saks & Company LLC, and Saks Incorporated (collectively, "Saks"), and Lord & Taylor, LLC ("Lord & Taylor") (collectively, "Hudson Bay" or "Defendants", and with Plaintiffs, the "Parties") will make available up to $4,000,000 for direct payments to Class Members. *See* Settlement Agreement ("SA") (ECF No. 86, Ex. 1, at §4.4(a)). Hudson Bay has agreed to pay: (1) $1.85 for each Alerted-On Payment Card (the "Fixed-Payment Claim"); and (2) up to $3,000 per Settlement Class Member as compensation for reimbursement paid to customers for fraudulent activity on Alerted-On Payment Cards incurred as a result of the Data Breach (a "Documented Out-of-Pocket Claim").  (SA §4.4(a)). The Settlement also provides the Settlement Class with meaningful

---

[1]    All capitalized terms used herein have the same meanings as those used in the Settlement Agreement.

injunctive relief by requiring Defendants to make significant changes in cybersecurity practices. (SA §4.8).

After reaching agreement on the substantive terms of the Settlement, the Parties were also able to negotiate an agreement on attorneys' fees, expenses, and Service Awards that Defendants will pay separate and apart from its direct payments to the Settlement Class. Per this agreement, Defendants have agreed to not oppose Class Counsel's request for and to pay attorneys' fees and expenses up to an amount of $1,100,000, Service Awards of up to $3,000 for each of the Settlement Class Representatives, and to pay the costs of notice and administration incurred by the Settlement Administrator to mail notice and administer the Settlement. (*Id.* §4.4(b)).[2]

As explained in more detail below, the requested award represents approximately 21.5% of the value of settlement benefits obtained for the Settlement Class and is commensurate with Class Counsel's efforts, the substantial risks undertaken, the outstanding results achieved, and is within the range of fees awarded in other complex, contingency fee cases in this type of litigation. For these reasons, Plaintiffs respectfully request that the Court grant their motion.

## II.    SUMMARY OF CLASS COUNSEL AND THE SETTLEMENT CLASS REPRESENTATIVE'S WORK

Prior to commencing this action, Class Counsel spent many hours investigating the claims against Hudson Bay. (Guglielmo Decl. ¶10).[3] Class Counsel's factual and legal investigation included gathering information about Hudson Bay's security practices and information about the types of information compromised in the Data Security Incident as well as a review of existing

---

[2]    Plaintiffs also incorporate by reference the statement of facts and procedural history from Plaintiffs' contemporaneously filed memorandum of Law in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.

[3]    Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Guglielmo Declaration") (ECF No. 86).

legal authority regarding potential legal claims. (*Id.*) This information was essential to Class Counsel's ability to understand the nature of Defendants' conduct and the potential relief and remedies for the Class.

After Class Counsel's diligent investigation, Plaintiffs filed a Complaint, and a First Amended Complaint, which Defendants moved to dismiss. (Guglielmo Decl. ¶4). After reviewing the motion to dismiss and analyzing Plaintiffs' allegations in order to determine potential weaknesses or deficiencies, Class Counsel sought and obtained leave to file a Second Amended Complaint, which remains Plaintiffs' operative complaint. (ECF Nos. 63 & 65).

Though party discovery was stayed effective September 26, 2019, (ECF No. 57), the Parties engaged in informal discovery that included Hudson Bay's production of the independent payment card industry forensic investigator report (the "PFI Report") that identified, in detail, the facts and circumstances related to the Data Security Incident. (Guglielmo Decl. ¶11). The PFI Report addressed the Data Security Incident and the Payment Card Industry Data Security Standards ("PCI-DSS") as they related to the Data Security Incident, as Plaintiffs alleged, which allowed Class Counsel to develop additional understanding of the breach at issue. (*Id.*) Class Counsel also engaged in extensive third-party discovery after the Court, on March 25, 2020, lifted the discovery stay to allow for the service of third-party subpoenas. (Guglielmo Decl. ¶12; ECF No. 69). Class Counsel used to opportunity to issue subpoenas to the Card Brands – Visa, Mastercard, and Discover; Hudson Bay's acquiring bank, JPMorgan Chase; and to Le Tote, Inc., which, in 2019, purchased Lord & Taylor from HBC. (Guglielmo Decl. ¶12).

The information Class Counsel received from Hudson Bay and through third-party discovery provided Class Counsel with a clear understanding of Hudson Bay's potential liability and damages and the strengths and weaknesses of Plaintiffs' claims. (*Id.* ¶13). While engaging in

informal discovery, Class Counsel entered into settlement discussions with Defendants. (*Id.* ¶5 & 7). This included a full-day mediation session overseen and guided by Hon. Diane M Welsh (Ret.) and numerous direct discussions about a possible resolution to this Action. (*Id.* ¶7). After reaching a settlement in principle, Class Counsel then began the process of drafting the settlement terms and the Parties entered into arms-length negotiations over the structure of the settlement, which was reduced to a term sheet on November 24, 2020. (*Id.*).  Following further extensive arms-length negotiations, the Parties finalized and executed the Settlement on April 23, 2021. (*Id.*).

The Settlement Class Representatives actively participated in all phases of the litigation and were instrumental to Class Counsel's ability to prosecute the litigation and determine that the Settlement was fair, reasonable, and adequate. Both provided substantial assistance, including by providing information and documents to Class Counsel, and actively participating in the full-day mediation with the Hon. Diane M. Welsh (Ret.). (Guglielmo Decl. ¶9).

## III.   ARGUMENT

### A.   The Requested Attorney's Fees Are Fair and Reasonable and Should Be Approved.

The Second Circuit has approved two methods to calculate appropriate attorney's fees in class action settlements: the lodestar method and the percentage of the fund method. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). While courts have discretion to use either method, the trend within the Circuit is to apply the percentage of the fund method. *Id.* at 417–18. As explained below, the use of the percentage method is appropriate in this case, and in any event, the reasonableness of the fee request is fully supported by a lodestar cross-check, indicating that the fee should be approved regardless of the method used by the Court.

1.     **The Requested Fee Is a Reasonable Percentage of the Constructive Common Fund**

The Supreme Court has long recognized that a lawyer who obtains a recovery "for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014).

Where, as here, a class action settlement creates a common fund, plaintiff's counsel is entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The Second Circuit prefers the use of the percentage of the fund method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014). Accordingly, the trend of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).

Under the percentage of the fund method, class counsel is awarded a reasonable percentage of the total value of the settlement fund created for the class. *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 406 (S.D.N.Y. 2019). When calculating the value of the common fund created by class counsel's efforts, a court should consider the "entire Fund, and not some portion thereof" that has been "created through the efforts of counsel at the instigation of the entire class." *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). This means that

courts compensate class counsel for their work in extracting both monetary and non-monetary relief. *See Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs['] counsel have achieved a good recovery for the class, [includes the value of both monetary and non-monetary relief] . . . .").

It also means that the value of the entire fund includes the value of attorneys' fees the defendant has agreed to pay. *See Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *16 n.10 (S.D.N.Y. Sept. 9, 2015) (noting that the "proper benchmark for the monetary portion of the fund" included the agreed settlement amount and attorneys' fees); *see also Yeagley v. Wells Fargo & Co.*, No. C05-03403 CRB, 2008 WL 171083, at *7 (N.D. Cal. Jan. 18, 2008), *rev'd on other grounds*, 365 F. App'x 886 (9th Cir. 2010) ("[I]t makes sense to include the fees as part of the common fund."); *In re Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019) (noting that "constructive common fund" doctrine is applicable when defendant negotiates payments to the class and counsel as a "'package deal'"); Manual for Complex Litigation (4th) § 21.7.

Through the efforts of Class Counsel, Hudson Bay has agreed to provide the Settlement Class with benefits worth $5,100,000.  This includes direct monetary relief made available to the Settlement Class worth $4,000,000, and up to $1,100,000 for the reasonable costs of attorneys' fees and expenses, Service Awards, and the costs of notice and administration to the extent ordered by the Court. (SA §§ 4.4(a)–(b)). Therefore, excluding any valuation for the injunctive relief that is also proved by the Settlement, Class Counsel's requested fee amounts to approximately 21.5% of the benefits made available to the Settlement Class.

Considering the percentage request, Class Counsel's request of 21.5% of the fund falls squarely within the range of awards that courts have granted in other data breach cases. *See e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018) (affirming an award of attorneys' fees that amounted to 29% of the settlement fund); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1088 (S.D. Tex. 2012) (awarding about $606,000 in attorneys' fees for a $3.2 million settlement involving a data breach resulting from compromised payment systems); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (concluding attorneys' fees of 27% under the percentage of the recovery method in a data breach lawsuit were reasonable).[4] The percentage also falls within the range that has otherwise been approved by courts in this Circuit.[5] Accordingly, and as further shown by application of the *Goldberger* factors below, Class Counsel's requested fee is reasonable under the percentage of the fund method.

---

[4]     While the Court must consider the entire fund created by counsel's efforts, *Masters*, 473 F.3d at 437, even if the Court were to exclude consideration of all attorneys' fees and expenses, Service Awards, and the Notice and Administration Costs of the Settlement, counsel's request would amount to approximately 27.5% of the constructive common fund and would fall well within the range of awards granted in similar cases.

[5]     *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 250 (2d Cir. 2007); (affirming an award of attorney's fees that amounted to 30% of a $42.5 million settlement fund); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (awarding attorneys' fees of 28% of the common fund in a class action settlement); *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 410 (S.D.N.Y. 2019) (awarding attorneys fess valued at 22% of an approximately $1.1 million common fund); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) (awarding attorney's fees of 25% of a $35 million dollar fund); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding attorneys' fees that amounted to 33% of the settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding attorneys' fees of 33.33% of $586 million fund in complex securities class action settlement).

### 2.      The *Goldberger* Factors Further Support the Reasonableness of the Requested Fee

Courts in the Second Circuit consider the following factors when examining the reasonableness of a fee request: "(1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ("Whatever method is used, the reasonableness of a common fund fee award is governed by the so-called *Goldberger* factors."). Each *Goldberger* factor confirms Class Counsel's requested fees are reasonable.

### a.      Time and Labor Expended by Counsel / Lodestar Cross Check

The first *Goldberger* factor, time expended by counsel, weighs in favor of the requested fee. When the percentage of the fund method is used, the analysis of this factor also serves as a lodestar "cross check" on the reasonableness of the percentage awarded. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 389 (S.D.N.Y. 2017) (citing *Goldberg v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d. Cir. 2000)). The cross check helps "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353. When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar is calculated by multiplying the reasonable hours billed by a reasonable hourly rate to create a presumptively reasonable fee. *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 406 (S.D.N.Y. 2019). The lodestar figure should be based on market rates "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill,

8

experience, and reputation." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).

Class Counsel spent 1,014 hours litigating this action, producing a lodestar amount of $675,344 based on standard hourly rates that range from $170 to $950. (Scott Decl. ¶6; Lynch Decl. ¶10; Halbert Decl. ¶7 & Ex. A).[6] Summaries of the number of hours expended by attorneys and staff are provided in the exhibits attached to Class Counsel's declaration. (Scott Decl. ¶6; Lynch Decl. ¶10; Halbert Decl. ¶7). The hours billed in this matter were spent drafting pleadings and briefs, engaging in informal and third-party discovery, and negotiating the Settlement. (Scott Decl. ¶2; Lynch Decl. ¶5; Halbert Decl. ¶4). These tasks are typical in litigation and were necessary to the successful prosecution and resolution of the claims against Hudson Bay. (Scott Decl. ¶5; Lynch Decl. ¶¶9; Halbert Decl. ¶3).[7] In prosecuting this action, Plaintiff's counsel billed at their standard hourly rates that have been accepted by courts in other cases.  Further, Class Counsel's hourly rates are market rates for lawyers of similar quality litigating matters in New York City. (Scott Decl. ¶6; Lynch Decl. ¶9; Halbert Decl. ¶6); s*ee also, e.g.*, *CDS Litig*, 2016 WL 2731524, at *17 (partner rates of $834 to $1,125 and associate rates of $411 to $714, *see* ECF No. 482); *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419-GBD, ECF No. 837 (ECF No. 817) (S.D.N.Y. Dec. 7, 2017) (partner rates of $875 to $975 and associate rates of $325 to $600).

Here, the requested fees of $1,100,000 represent a multiplier of 1.62 of Class Counsel's lodestar. A multiplier is appropriate where, as here, "the diminutive character of the individual claims forces counsel to bring the action on a class basis." *In re Agent Orange Prod. Liab. Litig.*,

---

[6]     Declarations of Daryl F. Scott ("Scott Decl."), Gary F. Lynch ("Lynch Decl."), and Karen Sharp Halbert ("Halbert Decl.") filed concurrently herewith.

[7]     Detailed billing and expense records have been prepared by all Plaintiffs' Counsel and can be submitted to the Court upon request.

818 F.2d 226, 236 (2d Cir. 1987) (observing that "[w]ithout the prospect of some consideration for the risks and uncertainties of the action, the necessary incentive for prosecuting such a suit would be lacking and a major weapon for enforcing various public policies would be blunted"). The multiplier may be determined by "dividing 1 by the probability of success." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 n.3 (7th Cir. 1995) ("A risk multiplier of 1.01 equates to a finding that the class counsel had better than a 99% chance of recovering its fees."); *accord Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) ("As the chance of success on the merits or by settlement increases, the justification for using a risk multiplier decreases.").

Given the risks Class Counsel assumed in taking on this litigation on a contingent basis and the quality of counsel's work and results achieved in this litigation, this multiplier is well within the range of multipliers approved in this Circuit. *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013) ("[E]ven in cases with comparably swift results, courts tended to award percentage fees that yielded lodestar multipliers between four and five.").  As such, the time and labor expended by Class Counsel, as demonstrated by the lodestar comparison, supports the reasonableness of the requested fee award.

### b.    The Magnitude and Complexities of the Litigation

The second *Goldberger* factor is the magnitude and complexity of litigation. Courts have recognized that "class actions have a well deserved reputation as being most complex." *In re*

*Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (citation and quotation marks omitted); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("[I]n a class action suit . . . the large number of plaintiffs increase the complexity of the litigation."). As alleged, Hudson Bay is a larger retailer with total revenues of approximately $14.3 billion, and its alleged failure to implement adequate data security measures harmed thousands of financial institutions. (ECF No. 65, at 11, 98.) While all the Settlement Class Members share a common injury, Plaintiffs would likely have to rely on expert testimony to establish both liability and the amount of damages each Settlement Class Member suffered. *See Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) ("Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony.") In light of the size of the Settlement Class and complexity of establishing damages, Class Counsel's efforts to reach an early resolution weigh in favor of the requested fees. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In the context of a complex class action, early settlement has far reaching benefits in the judicial system.").

### c.      The Risk of Litigation

The third *Goldberger* factor considers the risk of litigation and is "perhaps the foremost factor to be considered in determining whether to award an enhancement." *Goldberger*, 209 F.3d at 54. "It is well settled that class actions are notoriously complex and difficult to litigate." *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8831, 2014 WL 1224666, *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted). Importantly, courts recognize that the risks of establishing liability and damages weigh in favor of a fee's reasonableness. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). This is especially true when claims are prosecuted on a contingent basis as counsel assumes the risk of non-payment if not successful, which can justify

higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D.128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award.").

Here, Class Counsel took Plaintiffs' claims on a contingent basis despite facing significant risks in proving both liability and damages. As previewed by the motion to dismiss the First Amended Complaint, Hudson Bay intended to argue that Plaintiffs' primary cause of action is not cognizable, and would likely have vigorously opposed nationwide class certification. Although Plaintiffs believe in the strength of their case, as recognized by the Court during the August 1, 2019 Case Management Conference, there is no assurance that they would have prevailed in establishing liability, as similar cases have had mixed results for plaintiff financial institutions. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.,* 887 F.3d 803, 826 (7th Cir. 2018) (affirming the dismissal of plaintiff financial institutions' claims arising out of a data breach); *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 (D. Colo. 2017) (same); *cf. In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150 (N.D. Ga. 2019) (granting motion to dismiss in part); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161 (W.D. Wash. 2017) (same). Further, there is no guarantee Plaintiffs would have certified a national class. *See e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance).

Moreover, even if a class was certified and liability established, Plaintiffs' proof of damages would have likely required complex expert testimony and analysis. *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.) ("The issue [of damages] would undoubtedly devolve into a battle of experts whose outcome cannot be accurately ascertained in advance."). So, while Class Counsel is confident that Plaintiffs and their experts could establish damages, "Plaintiffs faced a significant risk of recovering nothing from Defendants." *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *7 (S.D.N.Y. Dec. 14, 2017). As such, this factor weights in favor of Class Counsel's requested fees.

### d.    The Quality of Representation

The fourth *Goldberger* factor is the quality of representation. "To evaluate the quality of the representation, courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). This includes considering the quality of the opposing counsel in assessing Class Counsel's performance. *See In re MetLife Demutalization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010). Nonetheless, the Second Circuit has recognized that "the quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55; see also *Maley*, 186 F. Supp. 2d at 373 ("The critical element . . . is the result obtained.").

Here, the quality of representation supports Class Counsel's fee request. First, the results obtained reflect the quality of representation as the Settlement immediately provides up to $4,000,000 for the Settlement Class's direct benefit and provides for injunctive relief that will enjoin the practices that gave rise to this litigation, plus $1.1 million towards the Settlement Class's attorneys' fees, litigation expenses, Service Awards, and notice and administration costs. Second,

13

Class Counsel's firm resume demonstrates that Class Counsel is among the most experienced and skilled class action attorneys handling consumer litigation in the country. (Guglielmo Decl. ¶2 & Ex. 2; *see alo* Lynch Decl. ¶13 & Ex. 1; Halbert Decl. ¶10 & Ex. C); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (finding that Class Counsel's substantial experience and expertise in prosecuting complex class actions weighed in favor of their requested fee). Third, Hudson Bay is represented by well-regarded counsel at Morgan Lewis & Bockius, LLP. Class Counsel's ability to secure such substantial benefits for the Settlement Class in the face of skilled opposition reflects on the quality Class Counsel's representation. As such, this factor weights in favor of Class Counsel's requested fee.

### e.    The Requested Fee in Relation to the Settlement

The fifth *Goldberger* factor, which compares the requested fee in relation to the settlement, supports Class Counsel's fee request and was discussed at length in § III.A.1, *supra*. Class Counsel's request for an award of 21.5% of the constructive Settlement Fund is not just consistent with approved awards by courts in this Circuit and elsewhere in similar data breach cases, as discussed in § III.A.1, *supra*, but is all more reasonable in light of the substantial injunctive relief secure for the Class's benefit. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *17 & n.13 (S.D.N.Y. Sept. 9, 2015) ("The substantial injunctive relief is a major factor in favor of the fee request, even if no specific monetary value is assigned to it."). Accordingly, this factor weights in favor of Class Counsel's fee request.

### f.    Public Policy Considerations

The sixth and final *Goldberger* factor is public policy considerations. "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency

basis]." *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014). Reasonable fee awards must be provided in order to ensure that skilled attorneys are incentivized to litigate class actions because they serve as private enforcement tools to police defendants who engage in misconduct. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 LEK/CFH, 2014 WL 7272960, at *2 (N.D.N.Y. Dec. 18, 2014) ("[P]ublic policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace."). Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014) (citing *Goldberger*, 209 F.3d at 51). In the instant case, Settlement Class Members lack the time and resources necessary to individually pursue long and protracted litigation that will result in relatively small individual recoveries in comparison to litigation costs. Thus, public policy favors the granting of attorneys' fees sufficient to reward Class Counsel for bringing these claims as they can only be prosecuted effectively through aggregate litigation and, as a result, the *Goldberger* factors support the requested fee.

**B.    Plaintiffs Counsel's Request for Reimbursement of Expenses is Reasonable.**

"It is well-established that counsel who create a common fund . . . are entitled to the reimbursement of [all reasonable] litigation costs and expenses." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010); *see also In re CRM Holdings, Ltd. Sec. Litig.*, 634 F. App'x 59, 61 (2d Cir. 2016) (noting that counsel can recover expenses incurred for work that benefited the class). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether "those expenses . . . would normally be charged to a fee-paying client." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020); *Park*

*v. Thomson Corp.*, 633 F. Supp. 2d 8, 13–14 (S.D.N.Y. 2009) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.").

Included in the combined request for $1.1 million, Class Counsel seeks reimbursement of $16,053.39 for the reasonable expenses incurred to advance this litigation (exclusive of costs of notice and administration, which will also be paid for from the same separate fund). (SA § 4.4(b)). These expenses are outlined in the declarations submitted concurrently herewith. (Scott Decl. ¶¶7; Lynch Decl. ¶11; Halbert Decl. ¶8).

As explained in § II, *supra*, Class Counsel undertook a diligent pre-filing legal and factual investigation, engaged in extensive informal and third-party discovery once this Court stayed party discovery, actively participated in mediation with the Hon. Diane M. Welsh (Ret.), and thoroughly worked to achieve this settlement. Further, roughly half of the expenses listed are attributable to Class Counsel's portion of the mediator's fee. incurred. (Scott Decl. ¶7). The remainder of the expenses are associated with costs associated with prosecuting the action, including discovery costs, the cost of service of process, pro hac vice motions, and filing fees. (Scott Decl. ¶7; Lynch Decl. ¶11; Halbert Decl. ¶9). In sum, these expenses amount to $16,053.39, less than 0.3% of the aggregate constructive common fund. These expenses are typical in litigation, were necessary to the successful prosecution and resolution of the claims against Hudson Bay, and should be approved.

### C.   Application for Service Awards.

Granting service awards to compensate the Class Representatives is consistent with the precedent in the Second Circuit. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019) (upholding the award of service awards for class representatives); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 269 (S.D.N.Y. 2020) ("Class representative service awards serve the purposes of Rule 23 and may be awarded to compensate

efforts undertaken on behalf of class members."). In determining whether a service award is appropriate courts will consider "the personal risk incurred by the individual" and "any additional effort expended by the individual for the benefit of the lawsuit." *Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 14 (S.D.N.Y. 2009). Importantly, district courts in the Second Circuit routinely approve service awards of $15,000 or less to reward class representatives.[8]

Pursuant to the Settlement Agreement, for their time and effort advancing the action and for the risks they assumed in prosecuting the action against Defendants on behalf of the Settlement Class Members, Class Counsel requests, and Defendants do not oppose, Service Awards of $3,000 for each named Settlement Class Representative. Specifically, each Settlement Class Representative invested time in this litigation by providing documents to Class Counsel and actively participating in the mediation session. (Guglielmo Decl. ¶12). In particular, the Controller and Vice President of Accounting at Arkansas Federal Credit Union, the Vice President of Finance and Risk Management, and the Director of Compliance and Risk Management at The Summit Federal Credit Union, were all active participants in the mediation session and their participation was instrumental to Class Counsel's ability to determine that the Settlement was fair, reasonable, and adequate. (Guglielmo Supp. Decl. ¶3).[9] If approved, the incentive awards totaling $6,000, will reflect approximately 0.11% of the aggregate constructive settlement fund. Because of their

---

[8]     *See Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (awarding a service award for Class Representative's "considerable time assisting with the [case's] investigation, the "significant risk [he took] by attaching his name and reputation to this litigation," and his "commit[ment] to advancing the Settlement Classes' interests."); *Thompson v. Cmty. Bank, N.A.*, No. 819CV919MADCFH, 2021 WL 4084148, at *9 (N.D.N.Y. Sept. 8, 2021) (granting service awards of $5,000 for the Class representatives for their "substantive and meaningful work"); *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016) (awarding Class representatives $20,000 service awards where the class settlement fund amounted to $5.5 million).

[9]     Supplemental Declaration of Joseph P. Guglielmo filed concurrently herewith ("Guglielmo Supp. Decl.") filed concurrently herewith.

reasonable size and because they are tailored to reflect the Settlement Class Representatives' excellent service to the Settlement Class, the requested Service Awards should be approved. *See Colgate-Palmolive*, 36 F. Supp. 3d at 354 (award $5,000 to each of six named plaintiffs who "reviewed draft pleadings and motions, searched for and produced relevant documents, reviewed filings, and communicated regularly with Class Counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. at 151 (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs).

## IV.    CONCLUSION

For the above-mentioned reasons, Plaintiffs respectfully request that this Court grant their Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards, and approve an award of $1,100,000 for attorneys' fees, reimbursement of all litigation expenses, Service Awards, and the costs associated with notice and of administration of the Settlement.

Dated:  November 1, 2021           Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
Carey Alexander
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192

Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

Karen S. Halbert
Michael L. Roberts
Jana K. Law
**ROBERTS LAW FIRM, PA**
P.O. Box 241790
Little Rock, AR 72223
Telephone: 501-821-5575
Facsimile: 501-821-4474
karenhalbert@robertslawfirm.us
mikeroberts@robertslawfirm.us
janalaw@robertslawfirm.us

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com

*Attorneys for Plaintiffs Arkansas Federal Credit
Union and The Summit Federal Credit Union*